685 P.2d 837

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Ronnie PIERCE, Defendant-Appellant.**

No. 14295.

Court of Appeals of Idaho.

June 19, 1984.

Petition for Review Denied
Aug. 8, 1984.

Randy J. Stoker, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Stephen J. Gledhill and Myrna A.I. Stahman (argued), Deputy Attys. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

A jury found Ronnie Pierce guilty of robbery for his role in the holdup of a Twin Falls convenience store. After trial, Pierce admitted to his status as a persistent violator. The district judge sentenced Pierce to two concurrent, indeterminate terms not exceeding thirty years. On appeal, Pierce

raises numerous issues which we have consolidated into three groups. Part I of our opinion discusses the requirement that testimony given by an accomplice be corroborated, and we consider whether lack of such corroboration at a preliminary hearing may be raised as an issue on appeal from a judgment of conviction. Part II examines the permissible scope of cross-examination of witnesses concerning prior convictions and plea bargains. Part III treats three unrelated issues: (a) whether the state should have been allowed to file an amended information, (b) whether the state's failure to disclose the expected testimony of a witness deprived Pierce of a fair trial, and (c) whether the sentences imposed were unduly harsh. As part of our discussion of the sentencing issue, we note irregularities in the judgment of conviction, including the sentences, and direct the district court to correct them on remand. Finding no reversible error, we affirm the judgment in all other respects.

### I

We turn first to the question of corroboration. Idaho Code § 19–2117 provides that a defendant cannot be convicted upon the uncorroborated testimony of an accomplice. Pierce contends that the state presented insufficient corroboration of accomplice testimony at the preliminary hearing and at trial. We address the preliminary hearing and trial issues separately.

### A

Our threshold inquiry is whether we may review the sufficiency of evidence to support a determination of probable cause at a preliminary hearing, after the defendant has been convicted at trial. In the past, Idaho has viewed this question differently from the federal courts. In either jurisdiction, a defendant may challenge his detention without probable cause before he is convicted. However, as noted in *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975), federal courts will not review the sufficiency of evidence to establish probable cause for detention,

after the defendant has been convicted in a fair trial. The Idaho Supreme Court, on the other hand, traditionally has agreed to review probable cause determinations made at preliminary hearings even though the issue is raised after the conviction cutoff imposed by federal courts. *See, e.g., State v. Owens*, 101 Idaho 632, 619 P.2d 787 (1980) (decided after *Gerstein*); *State v. Braithwaite*, 3 Idaho 119, 27 P. 731 (1891). We recognized this divergence in *State v. Williams*, 103 Idaho 635, 651 P.2d 569 (Ct. App.1982). Based upon prior Idaho Supreme Court decisions, we held in *Williams* that a district court's denial of a motion to dismiss a criminal information, due to lack of probable cause to bind the defendant over for trial, could be reviewed on appeal from a judgment of conviction.

However, it now appears that Idaho has switched to the federal track. In *State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336 (1983), our Supreme Court—without mentioning *Williams* or its own prior decisions—cited *Gerstein* and adopted a conviction cutoff for reviewing probable cause determinations at preliminary hearings. The Supreme Court noted that Idaho law previously had imposed a conviction cutoff for review of probable cause determinations upon arrest warrants. *See, e.g., State v. Watson*, 99 Idaho 694, 587 P.2d 835 (1978). The court reasoned that a similar cutoff should be adopted with respect to preliminary hearings.

Technically, *Williams* and *Mitchell* might be distinguished upon the ground that *Mitchell* was concerned with "admissibility" of the evidence at a preliminary hearing, while *Williams* dealt with the "sufficiency" of the admissible evidence. However, because evidence at a preliminary hearing must be both admissible, under the standards applicable to such hearings, and sufficient to establish probable cause, this distinction would be one without a genuine difference. Therefore, we feel constrained to hold that *Mitchell* implicitly has overruled *Williams* and previous Supreme Court decisions. For reasons stated below, we find that Pierce was properly

convicted following a fair trial. Therefore, we decline to examine the sufficiency of the corroborative evidence presented at the preliminary hearing.

### B

■ We now review the sufficiency of corroborative evidence presented at trial. As noted above, the corroboration requirement is set forth in I.C. § 19–2117. The full text of the statute reads as follows:

A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof.

The critical language is the phrase "tends to connect the defendant with the commission of the offense." To determine whether the evidence in this case had that tendency, we will examine first the inculpatory testimony given by one of Pierce's accomplices, then the testimony of other witnesses and physical evidence presented at trial. In determining whether such other testimony and physical evidence tended to connect Pierce with commission of the robbery, we are mindful of the general rule that in reviewing convictions after jury trials, we must view the evidence most favorably to the prosecution. *State v. Fenley*, 103 Idaho 199, 646 P.2d 441 (Ct.App.1982). We defer to the jury's right to determine the credibility of witnesses and to draw any permissible inferences. *State v. Mata*, 106 Idaho 184, 677 P.2d 497 (Ct.App.1984).

It is undisputed that in March, 1981, a single individual entered the Twin Falls convenience store and conducted the holdup. One Charles Spencer pled guilty to robbery for committing those acts. Another individual, Dain DeLucia, pled guilty to a charge that he had been an accessory to the crime. A third individual was charged with aiding and abetting the robbery. That person was the present appellant, Ronnie

Pierce. Both DeLucia and Spencer testified at Pierce's trial. DeLucia testified against Pierce, Spencer for him. Because Spencer's testimony did not inculpate Pierce, the corroboration issue is narrowed to the testimony of DeLucia.

DeLucia stated that Pierce was involved in both the planning and the execution of the robbery. The planning process involved the acquisition of two guns, one from DeLucia and one from another mutual friend who did not participate in the crime. DeLucia asserted that the three men also had purchased a ski mask and together had "cased" other businesses before deciding to rob the store in question. Although DeLucia acknowledged that Pierce had not entered the store at the time of the holdup, he stated that Pierce acted as a lookout for Spencer. DeLucia admitted driving the getaway car. Pierce disputed DeLucia's testimony. He testified, with some support from Spencer, that he had been unaware of any scheme to rob a store and that he had been unconscious from intoxication, sleeping in the back of the getaway car, when the robbery occurred.

Thus, the jury was faced with conflicting versions of events. The jury was entitled to accept DeLucia's testimony if corroborated. Before examining the corroborative evidence it is important to explain the meaning and purpose of corroboration. "Corroborate" is defined as "[t]o strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." BLACK'S LAW DICTIONARY 311 (rev. 5th ed. 1979). "Corroborating evidence" is further defined as "[e]vidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character to the same point." *Id.* Our Supreme Court has held that although the corroboration must connect the accused with the crime, it may be slight and need only go to one material fact. *State v. Orr*, 53 Idaho 452, 24 P.2d 679 (1933). *See also State v. Bassett*, 86 Idaho 277, 385 P.2d 246 (1963); *State v. Larsen*, 91 Idaho 42, 415 P.2d 685 (1966).

■ The purpose of the corroboration rule, embodied in I.C. § 19–2117, is to offset the danger that an accomplice may wholly fabricate testimony, inculpating an innocent person, in order to purchase immunity from prosecution, or lenient treatment, for his own complicity in the crime. *State v. Boetger,* 96 Idaho 535, 531 P.2d 1180 (1975); *see also* 7 J. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW §§ 2057, 2059 (Chadbourn rev. ed. 1978). That purpose is served when the corroborative evidence independently tends to link the defendant with commission of the crime.

■ In the instant case, the state presented police testimony that Pierce had been seen with DeLucia and Spencer before and after the crime. Pierce was observed driving the getaway car before the crime, and was pulled over by a police officer who issued a warning against travelling the wrong way on a one-way street. Another witness stated that Pierce, Spencer and DeLucia together visited his home about one-half hour after the crime had been committed. Later, when the three were apprehended, Pierce again was driving the car. A gun used in the robbery was found in the car and introduced in evidence. Motor vehicle registration records presented at trial showed that the getaway car belonged to Pierce's wife.

Pierce argues that although this evidence tends to establish that a crime was committed, it does not connect him with it. We disagree. Pierce was convicted of being a principal to the crime of robbery. Idaho Code § 18–204 defines the level of participation required to be a principal:

All persons concerned in the commission of a crime ... whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission ... are principals in any crime so committed.

The jury in this case was entitled to infer from the corroborative evidence that Pierce had been present, and an active participant, in the crime. Moreover, even if the jury believed Pierce's testimony that he had passed out in the car—arguably making him "not ... present" at the crime—the evidence still was sufficient to support an inference that Pierce had "encouraged" the crime by allowing his wife's car to be used. Of course, Pierce resisted any such inferences but it was permissible for the jury to draw them. We conclude that the testimony of the accomplice DeLucia was adequately corroborated to sustain the conviction.

II

We now discuss two issues related to cross-examination. Pierce contends that the court erred by allowing the prosecutor to ask him, on cross-examination, whether he had any prior felony conviction. He also urges that the court improperly prevented him from cross-examining DeLucia about his prior misdemeanor convictions and his plea bargain with the state concerning this crime. We consider each issue in turn.

A

The question relating to cross-examination of Pierce leads us to the Idaho Rules of Civil Procedure. These rules, insofar as they relate to evidence, are applicable to criminal prosecutions. I.C.R. 26. Rule 43(b)(6), I.R.C.P., is entitled "impeachment by adverse party." It has replaced I.C. § 9–1209, which formerly was applicable to criminal prosecutions. *See State v. Palmer,* 98 Idaho 845, 574 P.2d 533 (1978). Rule 43(b)(6) states:

A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty or integrity is bad, *but not by evidence of particular wrongful acts, except* that upon a finding by the court in a hearing outside of the presence of the jury that *a prior conviction of a felony* of a witness is relevant to his credibility, it then may be shown by the examination of the witness, or the record of judgment, that he

has been convicted of a felony and the nature of the felony. [Emphasis added.]

█ The trial court in this case permitted inquiry only about the fact of prior conviction. The court did not allow the prosecutor to cross-examine concerning the number or nature of the underlying felonies. The court instructed the jury that evidence of the fact of prior conviction was to be considered solely for the purpose of evaluating credibility. Even as to such limited impeachment, Rule 43(b)(6) imposes two requirements. First, there must be "a hearing outside the presence of the jury." Second, one or more of the underlying felony convictions must be relevant to credibility. *State v. Ybarra,* 102 Idaho 573, 634 P.2d 435 (1981).

. █ The reporter's transcript shows that various motions were considered during the fourth day of trial. One of those motions concerned the prosecutor's proposed use of Pierce's prior convictions to impeach his testimony on cross-examination. Pierce had not yet taken the stand to testify. Arguments on that motion were conducted outside the presence of the jury. We find, therefore, that the court complied with the procedural requirements of Rule 43(b)(6).

█ We now consider the relevancy of the underlying crime to Pierce's credibility as a witness. The district judge was informed that Pierce had been convicted of several felonies, including injury to jail property and escape. The "escape" actually was the felony of obstructing or resisting police officers incident to an escape. Initially, the district judge expressed a view that the state should not be allowed to cross-examine Pierce on those convictions. He stated:

> The Court is going to rule at this time that the other two felonies are not relevant to [Pierce's] credibility. To me conviction [for the present] felony gives [Pierce] sufficient motive for lying so that the adding of his record does not significantly increase the motive as far as the jury is concerned.

However, after further argument by both counsel, the judge changed his mind and decided that the convictions were relevant to credibility. He said, "The Court would feel that it's relevant to his credibility, motive to lie, because the worse his record [the more likely he would be to lie]." It appears that the judge considered the fact of two convictions to be relevant, not that the specific, underlying crimes were relevant. In this respect, we believe the judge's focus was misplaced. Rule 43(b)(6) requires a particularized determination, based upon the nature of the crimes, that the prior convictions are "relevant to ... credibility." Otherwise, the hearing contemplated by Rule 43(b)(6) would be largely meaningless. However, our inquiry does not end merely because we disagree with the judge's analysis. Where a ruling is correct, although made upon an incorrect reason, it will be sustained upon the proper reason. *State v. White,* 102 Idaho 924, 644 P.2d 318 (1982).

Rule 43(b)(6) reflects crosscurrents in Idaho law. Prior to adoption of the rule, I.C. § 9–1209 allowed impeachment by prior felony convictions without the necessity of showing a link between the underlying crimes and the credibility of the witness. In *State v. Owen,* 73 Idaho 394, 253 P.2d 203 (1953), our Supreme Court adopted what then appeared to be the majority rule among American jurisdictions—that impeachment properly could consist of showing both the fact of prior conviction and the number and nature of felonies involved. However, in *State v. Shepherd,* 94 Idaho 227, 486 P.2d 82 (1971), the Supreme Court later overruled *Owen* and restricted inquiry to the fact of conviction. The court also spoke prophetically of an even more "enlightened" rule that would require weighing a felony's relevance to credibility against the prejudicial impact of disclosing it, but the court said Idaho was not then "ready" for such a rule. *Id.* at 230, 486 P.2d at 85. Several years later, after the present version of Rule 43(b)(6) had been adopted, the court acknowledged that:

> different felonies have different degrees of probative value on the issue of credi-

bility. Some, such as perjury, are intimately connected with that issue; others, such as robbery and burglary, are somewhat less relevant; and ... [a]cts of violence ... generally have little or no direct bearing on honesty and veracity. *State v. Ybarra, supra,* 102 Idaho at 580–81, 634 P.2d at 442–43, *quoting from People v. Rollo,* 20 Cal.3d 109, 141 Cal.Rptr. 177, 569 P.2d 771, 775 (1977).

These varied relationships between felony convictions and witness credibility have produced much disagreement among courts and commentators about the particular crimes suitable for impeachment. *See generally* Uvillar, *Evidence of Character to Prove Conduct: Illusion, Illogic, and Injustice in the Courtroom,* 130 U.PA.L. REV. 845, 869–876 (1982); 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 416 (2d ed. 1982); E. CLEARY, McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 43 (2d ed. 1972). One approach, exemplified by Rule 609 of the Federal Rules of Evidence, is to allow impeachment for any crime involving "dishonesty or false statement" and for other felonies found to have probative value on credibility which outweighs the prejudice arising from use of such felonies for impeachment. A committee of the Idaho State Bar recently has recommended a similar approach, except that the committee would not exempt crimes of dishonesty or false statement from the process of weighing probative value against prejudice. *See* REPORT OF THE IDAHO STATE BAR EVIDENCE COMMITTEE (December 16, 1983).

The federal rule and the Idaho State Bar's proposed rule agree on two fundamental points: (1) not all felonies are proper subjects for impeachment, and (2) those crimes which are proper subjects need not be limited to crimes of dishonesty or false statement. Each of these points is consistent with Rule 43(b)(6). The latter point—that impeachment may be allowed upon felonies other than crimes of dishonesty or false statement—is critical to the instant case.

■ The record before us discloses that Pierce's prior felony convictions were comprised, as noted, of injury to a public jail and resisting or obstructing police officers, incident to escape. An additional conviction for delivery of heroin also appears of record. It would be straining at language to characterize any of these offenses as crimes of "dishonesty or false statement." Neither are they limited to crimes of violence or sudden impulse. Rather, they are akin to offenses in the middle range of relevancy to credibility, identified in *Ybarra.* They are crimes which exhibit intentional deviations from legally prescribed standards of conduct. They show a pattern of disrespect for law and lawful authority. In our view, such established disrespect is relevant to evaluating whether Pierce would take an oath seriously as a witness and whether he would hesitate to testify untruthfully if it seemed advantageous to do so. These concerns are fundamental to the truth-seeking objective of our criminal justice system.

Therefore, we believe that Pierce's prior felonies plainly had probative value on the question of his credibility. Although not required by present Rule 43(b)(6), we would also ascribe greater weight to this probative value than to the prejudicial effect of impeachment—particularly in view of the fact that the district judge permitted reference only to the fact of prior conviction, not to the number or nature of the felonies involved. We conclude that the district judge did not err by allowing this limited impeachment, even though the reason he gave for doing so was incorrect.

**B**

■ Pierce also contends that the district court erred in preventing him from cross-examining DeLucia about prior misdemeanor convictions and the nature of DeLucia's plea bargain relating to his participation in the robbery. The question relating to impeachment by misdemeanor convictions returns us to Rule 43(b)(6). The rule permits impeachment by evidence of "general reputation" but not by evidence

of "particular wrong acts," unless those acts are felonies relevant to credibility. There is no similar exception for misdemeanor convictions. Idaho law is well settled that misdemeanor convictions cannot be used for impeachment. *E.g., State v. Bassett,* 86 Idaho 277, 385 P.2d 246 (1963); *State v. Alvord,* 46 Idaho 765, 271 P. 322 (1928). *But see* FED.R.EVID. 609(a)(2) (misdemeanor convictions are admissible if the crime involved dishonesty or false statement). We deem ourselves to be bound by the rule and by decisions of our Supreme Court on this point.

Pierce seeks to avoid the clear limitation of Rule 43(b)(6) by asserting that constitutional due process requires the jury to be apprised of DeLucia's misdemeanor convictions. It is, of course, difficult to square this assertion with Pierce's earlier contention that the jury should not have been informed of his prior felony convictions. However, the argument also falls of its own weight. We will not decide a constitutional question unless necessary to the case. *State v. Curtis,* 106 Idaho 483, 680 P.2d 1383 (Ct.App.1984). Due process would be implicated, if at all, only by convictions for misdemeanors relevant to credibility. DeLucia's convictions were for a curfew violation and a petty theft that occurred ten years before Pierce's trial. There is no tenable connection between those offenses and DeLucia's credibility at trial. Consequently, we hold that evidence of these convictions properly was excluded.

Pierce also argues that the district court erroneously prevented him from cross-examining DeLucia about a plea bargain he made with the state. Such an inquiry presumably was intended to reveal bias in favor of the state or, perhaps, a motive to give testimony consistent with a posture adopted in plea negotiations.

However, we note that the jury already had been apprised of the plea bargain and of the fact that DeLucia was allowed to plead to a lesser offense in return for his testimony. These facts had been elicited by the prosecuting attorney on direct examination:

Q. [by prosecuting attorney] What did the police charge you with originally in this matter?

A. [by DeLucia] Armed robbery.

Q. And you pled guilty to a charge?

A. Yes.

Q. What did you plead guilty to?

A. Accessory to armed robbery.

Q. All right. Did anyone make any promises or threats to get you to plead guilty to that charge?

A. The only thing anybody did was tell me that *if I testified, told the truth,* that the *charge would be lowered* to accessory. [Emphasis added.]

Q. Anybody else ever tell you to lie?

A. No.

Q. Has anybody told you to say what to say today?

A. No.

Q. Have you been sentenced on that charge?

A. No.

Pierce's counsel then was allowed to cross-examine DeLucia extensively. The only area in which questioning was restricted concerned the maximum penalties for robbery and accessory to robbery. The judge refused to allow inquiry into that subject because in order to compare the maximum penalties, the jury necessarily would be informed of the maximum penalty for armed robbery—the very crime for which Pierce was on trial. The judge felt such inquiry could have a prejudicial effect on the jury.

The control of cross-examination is committed to the sound discretion of the trial judge. The court's discretion should be exercised to allow a criminal defendant considerable latitude in cross-examining adverse witnesses; but a limitation imposed by the judge will not be overturned on appeal absent a showing of prejudice. *State v. Storms,* 84 Idaho 372, 372 P.2d 748 (1962). No such showing has been made in this appeal. A defendant is not entitled to insist that a jury be informed of the maximum penalty for the crime charged. The jury's function, with

exceptions not applicable here, is to determine guilt or innocence regardless of penalty. *See State v. Altwatter*, 29 Idaho 107, 157 P. 256 (1916). Because the jury was informed of the plea bargain, because Pierce was allowed to inquire substantially into the nature of that bargain, and because DeLucia had not yet actually been sentenced, we hold that the trial judge did not abuse his discretion by merely restricting further inquiry into comparable penalties for different offenses.

### III

We now turn to a collection of miscellaneous, but nevertheless important, issues raised by Pierce.

### A

The first such question is whether the state should have been allowed to amend the prosecutor's information before trial. Rule 7(e), I.C.R., governs the district court's power to permit the amendment of an information. It provides:

Amendment [of] information or indictment. The court may permit a complaint, an information or indictment to be amended at any time before the prosecution rests if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

The original information charged Pierce with robbery and cited I.C. § 18–6501. The state later sought to add two allegations for sentence enhancement: (1) that Pierce was a persistent violator under I.C. § 19–2514, and (2) that Pierce had committed the robbery with a firearm, invoking I.C. § 19–2520. Two hearings were held on the motion to amend. At the first hearing—some sixteen days before trial—both Pierce's attorney and the prosecuting attorney appeared and argued. At that time, the court did not rule but informed the state that it would have to show good cause for the proposed amendments. Two days later, the state filed an affidavit in support of its motion to amend. A second hearing was conducted one week after the

first. Pierce's counsel failed to appear but the court deemed his presence unnecessary in view of the prior opportunity to present argument. The persistent violator amendment was allowed; but the firearm amendment was denied because there was no factual basis to allege that Pierce had used a gun while playing his role in the robbery. Two days later, Pierce was arraigned on the persistent violator charge. His counsel then objected, arguing that he had received inadequate notice of the second hearing on the motion to amend. The same argument now confronts us on appeal.

■ We deem it unnecessary to decide whether defense counsel received sufficient notice or, if not, whether such error would invalidate the court's order allowing the persistent violator amendment. The record shows that, following trial on the robbery charge, Pierce admitted his persistent violator status. He was adjudicated a persistent violator upon that admission. We hold that the admission waived any defect in the hearing which resulted in amendment of the prosecutor's information. *Cf. Clark v. State*, 92 Idaho 827, 832, 452 P.2d 54, 59 (1969) (holding that a valid guilty plea "waives all nonjurisdictional defects and defenses").

### B

The next question is whether a mistrial should have been declared, in response to two motions by Pierce, because the state allegedly failed to disclose information about a witness. Pierce claims that he was prejudiced by surprise at trial when the state did not inform him that a witness whom he intended to call, and did call, actually would give adverse testimony. Pierce's contention is two-pronged: that the state violated I.C.R. 16 by nondisclosure, and that the failure to disclose infringed upon his due process right to a fair trial. We will consider each argument separately.

■ As a prefatory note, we observe that the standard of appellate review, where a criminal defendant's motion for

mistrial has been denied, is whether the event that precipitated the motion, viewed retrospectively, constituted reversible error. *State v. Urquhart*, 105 Idaho 92, 665 P.2d 1102 (Ct.App.1983). Thus, the overriding question here is whether the state injected reversible error into these proceedings by failing to inform Pierce that his proposed witness might turn against him.

The events producing the first motion for mistrial occurred when the defense called to the witness stand an inmate of the same jail where DeLucia and Pierce had been detained. Before trial, this witness told Pierce's counsel that DeLucia had said, during a conversation at the jail, that Pierce was asleep in the car when the robbery occurred. However, when he took the stand, the witness failed to give the expected testimony on direct examination. Instead, he testified that the jailhouse conversation consisted simply of Pierce asking DeLucia if he had made a statement to the police, DeLucia denying that he had, and Pierce refusing to believe DeLucia. The witness then added, on cross-examination by the state, that the story he originally told Pierce's counsel was the product of a bribe by Pierce.

The second motion for mistrial came after Pierce had testified in his own behalf and had referred to a potentially exculpatory letter received from one of the accomplices. The state promptly called the jail inmate to the stand again as a rebuttal witness. He then testified that he had seen Pierce make alterations on the letter.

It appears that the prosecutor knew, for about a week before trial, what the jail inmate would say if called as a witness. The state did not plan to call him, except in rebuttal. The state was aware, from Pierce's response to discovery, that Pierce planned to call him. Pierce now contends that the state had a duty to disclose what it knew about the inmate's testimony, if called.

We first turn to I.C.R. 16, which governs discovery in criminal cases. Parts (a) and (b) of the rule outline the prosecutor's duty to disclose information to the defendant.

Part (a) requires automatic disclosure of evidence "which tends to negate the guilt of the accused ... or which would tend to reduce the punishment." Part (b) requires the disclosure of several enumerated types of information "upon written request" of the defendant; and it requires further disclosure upon order of the court when a defendant shows he has a "substantial need" for additional material. With respect to the inmate's testimony as a defense witness, part (b) of Rule 16 is inapplicable. None of the discovery items enumerated in part (b) relates to information about a defense witness. Therefore, we narrow our focus to part (a).

■ There is substantial overlap between part (a) and a prosecutor's constitutional duty to disclose certain information. The requirement of automatic disclosure under the rule is triggered if the evidence tends "to negate ... guilt." The constitutional duty is triggered if the evidence is "exculpatory." *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Our Idaho Supreme Court has held that the state must disclose "evidence that would create a reasonable doubt of guilt that did not otherwise exist." *State v. Brown*, 98 Idaho 209, 212, 560 P.2d 880, 883 (1977). Thus, the constitutional duty of disclosure and the requirement to disclose under Rule 16(a) both relate to exculpatory evidence. *See generally* Comment, *The Prosecutor's Duty to Disclose Exculpatory Evidence*, 14 IDAHO L.REV. 223 (1977).

■ In the present case, none of the testimony given by the jail inmate, when called by the defense, was exculpatory. Rather, it tended to implicate Pierce in witness tampering. Of course, such testimony would have been subject to a duty of disclosure under Rule 16(b) had the inmate been the state's witness. However, as noted, the inmate was a defense witness when first called to the stand. The inmate's subsequent testimony as a rebuttal witness for the state implicated Pierce in tampering with documentary evidence. However, there is no constitutional duty, nor any

requirement under Rule 16(a), for the state to disclose potentially inculpatory testimony of a rebuttal witness. *State v. Olsen*, 103 Idaho 278, 647 P.2d 734 (1982). *See also* I.C. § 19–1302.

Pierce urges that unpleasant surprises during the trial could have been avoided had the state disclosed what it knew about the inmate's prospective testimony. Be that as it may, the state has no general obligation to assist the defendant in preparing his case. *State v. Horn*, 101 Idaho 192, 610 P.2d 551 (1980). This is not an instance where a criminal defendant has been dependent upon the state's superior ability to gather information about the case. The jail inmate was available for pretrial interview by the prosecutor and defense counsel alike. We conclude that the state's failure to disclose his expected testimony violated no constitutional duty or rule requirement. Accordingly, we sustain the trial court's denial of Pierce's mistrial motions.

### C

Finally, we consider Pierce's contention that his sentences were unduly harsh, representing an abuse of discretion. Before addressing that contention on its merits, we note that the state's appellate brief points out two technical errors in the judgment of conviction. First, the judgment, labeled an "order of commitment," recites that Pierce was convicted, upon a guilty plea, of "armed robbery." In reality, of course, Pierce did not plead guilty to this offense; he was found guilty after the jury trial. Moreover, "armed robbery" is a lay term having no counterpart in our statutes. Idaho Code § 18–6501 defines the crime of "robbery." That crime consists of a "felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Such force or fear may be produced with or without a weapon. *See* I.C. § 18–6502 (fear which constitutes robbery). In the case before us, the district judge expressly declined to allow an amendment of the

prosecutor's information to charge Pierce with using a firearm while committing a crime. I.C. § 19–2520. The judgment should be corrected to state simply that Pierce was convicted, upon a jury verdict, of robbery.

The second technical error is that the judgment, after referring both to the "armed robbery" and to persistent violator status, sentenced Pierce to custody of the Board of Correction for two concurrent, indeterminate periods not exceeding thirty years "on each count." However, the penalty authorized by I.C. § 19–2514 upon a persistent violator adjudication is not a separate sentence. A persistent violator allegation does not charge an "additional or different offense." I.C.R. 7(e). Rather, I.C. § 19–2514 provides for a greater penalty upon conviction of a third felony than might have been imposed for that felony alone. *See Clark v. State*, 92 Idaho 827, 452 P.2d 54 (1969). This penalty is embodied in one sentence upon the felony. *State v. Dunn*, 91 Idaho 870, 434 P.2d 88 (1967). Accordingly, the judgment in this case should be further corrected to state that Pierce, having been adjudicated a persistent violator, is given a single thirty-year indeterminate sentence for the robbery.

We now consider whether such a sentence is excessive. The sentence is within the life terms authorized by I.C. § 18–6503 for robbery and by I.C. § 19–2514 for being a persistent violator. The presentence report shows that Pierce, who was twenty-seven years old when the robbery was committed, had compiled an exceptionally long prior record of juvenile violations, misdemeanors (including assaults and batteries) and felonies. As mentioned earlier, the felonies—for which Pierce had served both jail and prison time—were comprised of obstructing or resisting police officers, damaging jail property and delivery of heroin. The presentence investigator stated that "none of the available rehabilitative alternatives appear to be appropriate" for Pierce. The investigator found "no reason to believe" that Pierce's pattern of unlaw-

ful behavior "would change for the better in the foreseeable future."

Having reviewed the full record and having considered the sentence review criteria set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we conclude that the district court did not abuse its discretion in sentencing Pierce to an indeterminate, thirty-year period of custody. Although such a term might not be justified solely by Pierce's participation in the robbery, it is warranted by Pierce's long prior record. Sentencing must take account of the offender's background as well as the nature of the offense. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct. App.1982).

Pierce maintains that his sentence is excessive because it is greater than sentences received by his accomplices. De-Lucia, who pled guilty to the lesser offense of accessory to robbery, received a jail sentence of six months. Spencer, who pled guilty to the same crime for which Pierce was convicted, received a five-year, indeterminate sentence. However, in Idaho's system of individualized sentencing, a facial sentence disparity is not sufficient reason, of itself, to modify a sentence that otherwise has been properly imposed. *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct. App.1984). *See also Holmes v. State,* 104 Idaho 312, 658 P.2d 983 (Ct.App.1983). The sentencing judge in this case made a thorough, individualized analysis. We conclude that he did not abuse his discretion by sentencing Pierce to a longer term than those received by his accomplices.

We remand the "order of commitment" for correction in accordance with this opinion. The judgment of conviction evidenced by that order, including the sentence imposed, is in all other respects affirmed.

WALTERS, C.J., concurs.

SWANSTROM, Judge, concurring specially.

I disagree with the majority's analysis leading to the conclusion that the particular prior felonies committed by Pierce were relevant to his credibility. Under that type of analysis no crime would be excluded. Moreover, in this case the felony impeachment evidence thrust into the trial was totally unnecessary. Obviously, there was so much at stake for the defendant facing the charge of robbery that no other "motive for lying" needed to be suggested. The state should have been content to rely upon the other truly relevant, and less prejudicial, evidence to undermine Pierce's credibility. Only because I think the prejudice was minimized and the error was harmless in this instance do I concur in Part II–A of the opinion. I concur fully in the remainder of the opinion and in the vote to affirm.