818 P.2d 768

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mario Albert HERNANDEZ, Sr.,
Defendant–Appellant.**

No. 18946.

Court of Appeals of Idaho.

Sept. 5, 1991.

May & May Law Offices; Thomas D. Kershaw, Jr., Twin Falls, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Mario Hernandez was found guilty by a jury of the aggravated battery of his ex-wife. On appeal, he asserts five errors. His primary points of contention focus on the court's enhancement of his sentence after concluding that he had used a deadly weapon. Hernandez argues that the court erred because it did not require the jury to make a separate factual finding, allegedly required by statute, that the battery was committed with a deadly weapon. Hernandez also asserts that the court's conclusion was not justified by the evidence and violated the double jeopardy clause of the state and federal constitutions. He also questions the admissibility of testimony from the victim concerning certain letters he had written to her. Finally, he contends that his sentence of twenty-one years, with a minimum confinement period of seven years, was excessive. For the reasons stated below, we affirm the judgment and sentence.

### Facts

The jury found Hernandez guilty of the aggravated battery of his ex-wife, Teresa Galvan, based on the following facts. On the date of the incident, Galvan returned home from a family gathering at about 1:45 a.m. After a five or ten minute drive to take the baby sitter home, Galvan parked her car in her driveway. After exiting the car, she was confronted by Hernandez who, according to Galvan, demanded to know where she had been. When she refused to tell him, he became very angry and pushed her against the car. Hernandez reportedly said that because Galvan did not want him to touch her, no one else could either. Then, he struck her in the face and neck. He reached into his pocket and pulled out something that glinted in the light. Galvan testified that she thought it was a knife because as long as she had known him—approximately seventeen years—he had always carried a pocket knife. Hernandez then struck at Galvan with the object as she tried to turn away from him. She yelled for her ten-year-old son Gilroy, whom she knew was in the house watching television. Gilroy came outside to help his mother, finding her slumped by the car and bleeding badly. When Hernandez saw Gilroy, he ran off. Gilroy helped Galvan to a neighbor's house, where the police and an ambulance were called.

Officer Curtis Gambrel, the Twin Falls police officer who responded to the call, observed that Galvan's shirt and sweatshirt were red with blood. He concluded at the scene and testified at trial that Galvan had been stabbed several times. Dr. Harry Brumbach, who treated Galvan after she

was taken to the hospital, testified that she had been stabbed a total of eight times in her chest, back and neck. The wounds were made by a sharp pointed instrument and were, according to the doctor, consistent with wounds made by a knife. He testified that although the wounds were superficial, that is, they did not enter the abdominal cavity or puncture any vital organs, they could have been life-threatening had they been in different locations on Galvan's chest. The doctor also stated that Galvan's clothing may have cushioned and re-directed the blows.

The jury found Hernandez guilty of aggravated battery. The court ruled that because the battery charge included the allegation that Hernandez had used a deadly weapon, the verdict automatically permitted an enhancement of the sentence pursuant to I.C. § 19–2520, and the separate allegation in the information that Hernandez had used a deadly weapon need not be submitted to the jury. The jury also found that Hernandez was a persistent violator.

The court sentenced Hernandez to a term of confinement of twenty-one years, with a minimum fixed period of seven years. Clarifying the sentence, the court stated that the final year of the indeterminate fourteen-year period was imposed as an enhancement for using a deadly weapon during the crime. The court determined that it need not delineate what portion of the sentence it ascribed to the finding that Hernandez was a persistent violator.

### Issues on Appeal

Hernandez raises the following issues on appeal:

1. The court erred when it allowed Galvan to testify that Hernandez had written letters threatening her if she did not drop the charges and apologizing for "what he put her through."

2. There was insufficient evidence for the jury to find that Galvan was injured with a deadly weapon when no one could accurately identify or describe the weapon and her injuries turned out not to be life-threatening.

3. The court erred when it did not require the jury to make a specific finding as to whether a deadly weapon was used, instead determining that such a finding was implicitly made in the jury's verdict that Hernandez had committed the aggravated battery.

4. The sentence enhancement imposed for use of a deadly weapon during an aggravated battery violated state and federal prohibitions against double jeopardy.

5. His sentence may be excessive because the court did not articulate the period by which the sentence was increased as a result of the jury's finding that Hernandez was a persistent violator.

### 1. Testimony Regarding the Letters

Hernandez asserts that the court erred when it allowed Galvan to testify that he had written her several threatening letters, when she could not produce the letters at trial. He objected at trial that the testimony was hearsay and also claims on appeal that the information was irrelevant, prejudicial, and denied him a fair trial. We find that the testimony was properly admitted.

Galvan testified Hernandez had written that

> He wanted me to drop the charges. It would be to my advantage to drop the charges. He mentioned that it would— he threatened me in the letters that he would do something to keep me from going to court, even if I was going to come to court. And if he couldn't do something, he would get somebody else to do it for him. He also did apologize for what he did to me, what he put me through.

The court did not articulate the grounds for admitting the testimony. However, similar testimony was reviewed regarding Hernandez' motion in limine to exclude information about threatening phone calls he allegedly made to Galvan. The court denied the motion and held that the statements, made by a party to the action, would be admitted as an exception to the hearsay rule. In that instance, the trial court was generally

correct. We reach the same conclusion regarding Galvan's testimony regarding the letters.

Idaho Rule of Evidence 801(d)(2) provides that a statement is not hearsay if it is offered against a party and is his own statement. Our Supreme Court has held that out-of-court statements by parties to litigation are admissible whether they are classified as non-hearsay or as an exception to the hearsay rule, although the better approach is to classify the statements as non-hearsay. *Jolley v. Clay*, 103 Idaho 171, 175, 646 P.2d 413, 417 (1982), *citing* Fed.R.Evidence § 801(d)(2). The statements allowed in I.R.E. 801(d)(2) are classified as "admissions." However, that term does not merely refer to inculpatory statements by a party that he committed the act in question. Instead, admissions refers to "words, oral or written, or conduct of a party or his representative offered in evidence against him." E. Cleary, McCOR-MICK ON EVIDENCE, p. 776 (3rd ed. 1984). Thus, Galvan's testimony concerning the letters Hernandez allegedly wrote as a party to the action were not hearsay and on that basis were admissible under I.R.E. 801(d)(2).[1]

■ Hernandez also challenges Galvan's testimony on the basis that it was irrelevant because the alleged threats were made "months or years after the crime was said to have been committed." Relevant evidence is evidence that tends to make the existence of any fact of consequence in the action more or less probable than it would be without the evidence. I.R.E. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or [of] misleading the jury...." I.R.E. 403.

We find Hernandez' argument untenable. Certainly, if one is going to threaten to harm another for prosecuting a case, the threat will be made sometime between the date of the incident giving rise to the prosecution, and the time of trial. Apologies and statements of regret could also come anytime within that period. Further, we find the testimony relevant to the question of whether Hernandez may have committed the battery. Someone who was innocent of the charge would be unlikely to threaten another or apologize for the act.

■ Hernandez also argues that the testimony about the letters was prejudicial and denied him a fair trial. Although the information is contrary to Hernandez' claims of innocence and is therefore prejudicial, "probative evidence is always prejudicial to someone." *State v. Palmer*, 110 Idaho 142, 146, 715 P.2d 355, 359 (Ct.App. 1986) *citing State v. Fenley*, 103 Idaho 199, 209, 646 P.2d 441, 445 (Ct.App.1982). He has made no showing that the probative value of Galvan's testimony is outweighed by its prejudicial effect. Further, we find the prejudicial effect to be counter-balanced to some degree by the fact that Galvan could not produce the letters at trial because she had destroyed them.

Next, Hernandez asserts that the testimony was prejudicial because Galvan did not articulate what Hernandez was apologizing for in the letters and that any one of several reasons could be produced. Testimony at trial indicated that their relationship, which dated from at least 1970, was very troubled. For example, Galvan stated that at the time of the incident she had a court order prohibiting Hernandez from trespassing on her property. At face value, then, one could infer that Hernandez had been apologizing for any one of many wrongs he may have felt responsible for regarding Galvan. However, we refuse to draw that inference. Here, Galvan's testimony was prompted by her counsel's specific reference to the battery when he asked "What did he say *about the incident* in those letters?" (Emphasis added.)

---

1. Hernandez did not assert that the letters would be the "best evidence" of their contents, compared with Teresa's oral testimony relating her recollection of the statements in the letters. We need not determine the propriety of Teresa's testimony in that regard, in the absence of a specific objection raising a "best evidence" question. *Smith v. Smith*, 95 Idaho 477, 481, 511 P.2d 294, 298 (1973).

## 2. Sufficiency of the Evidence

Hernandez argues that there was insufficient evidence for the jury to find that Galvan was injured with a deadly weapon when no one could accurately identify or describe the weapon and the injuries turned out not to be life-threatening. We disagree.

■ Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be set aside where there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Filson*, 101 Idaho 381, 386, 613 P.2d 938, 943 (1980). "[W]e are precluded from substituting our judgment for that of the jury as to the credibility of witnesses, the weight of the testimony, and the reasonable inferences to be drawn from the evidence." *State v. Campbell*, 104 Idaho 705, 718–19, 662 P.2d 1149, 1162–63 (Ct. App.1983). Furthermore, we view the evidence in the light most favorable to the respondent. *State v. Fenley*, 103 Idaho 199, 203, 646 P.2d 441, 445 (Ct.App.1982).

■ Hernandez was charged with aggravated battery as it is defined in I.C. § 18–907(b); in particular, that he committed the battery "by means of a deadly weapon, to-wit: a knife or other instrument." Our Supreme Court has defined a deadly weapon as a weapon which is

likely to produce death or great bodily injury. If it appears that the instrumentality is capable of being used in a deadly or dangerous manner and it may fairly be inferred from the evidence that its possessor intended on a particular occasion to use it as a weapon should the circumstances require, its character as a dangerous or deadly weapon may be thus established, at least for the purposes of that occasion.

*State v. Missenberger*, 86 Idaho 321, 327, 386 P.2d 559, 562 (1963). In *State v. Jones*, 109 Idaho 31, 32, 704 P.2d 363, 364 (Ct.App. 1985), this Court discussed how a stocking filled with batteries could be used as a deadly weapon, even though the actual injury to the victim—a penitentiary guard struck by an inmate—was limited to a laceration on the officer's head requiring fifteen stitches. This Court stated that

Witnesses present during the offense testified to the force of the blow and the effect it had on the victim. The jury legitimately could have inferred that if a more sensitive area of the head had been struck, or if other correctional officers had not intervened, greater bodily harm would have resulted.

In *Jones*, we found that there was sufficient evidence to enable the jury to determine that the stocking containing the batteries was a deadly weapon or instrumentality under I.C. § 18–907(b). *See also State v. Matthews*, 118 Idaho 659, 798 P.2d 941 (Ct.App.1990) (sulphur gun was a deadly weapon, even where wounds were not major). Thus, where the state alleges and proves the use of a deadly weapon as an element of aggravated battery under I.C. § 18–907(b), the nature or extent of the injury suffered by the victim is secondary.[2]

■ The same analysis applies in the instant case. Galvan testified that Hernandez was her attacker and about the effect the stabbings had on her. Gilroy testified that he saw Hernandez run off and that he found his mother by the side of the car bleeding badly. Officer Gambrel testified that Galvan had been stabbed, probably with a knife. He stated "I took a look at the injuries ... and told the ambulance to expedite, we had multiple stab wounds and was bleeding severe [sic]." Dr. Brumbach testified that the wounds were consistent with those made with a knife and had they been in different locations on Galvan's chest, her life could have been threatened. We conclude that there was substantial evidence upon which the jury could have found beyond a reasonable doubt that Her-

---

**2.** *Compare* I.C. § 18–907(a), where the "injury" may be charged as an element of another form of aggravated battery, *i.e.*, the battery "causes great bodily harm, permanent disability or permanent disfigurement."

nandez had attacked Galvan with a deadly weapon.

### 3. Deadly Weapon

Hernandez argues that the court erred when it did not require the jury to make a specific finding as to whether a deadly weapon was used, determining instead that such a finding was implicit in the jury's verdict that Hernandez was guilty of committing an aggravated battery. Hernandez asserts that I.C. § 19–2520 requires the use of a deadly weapon to "be separately charged and separately found by the jury" and that because the finding was not separately made, the one-year portion of his sentence that can be attributed to the deadly weapon enhancement was erroneous.

For a sentence to be enhanced for use of a deadly weapon, the use of the weapon must be "separately charged in the information or indictment and admitted by the accused or found to be true by the trier of fact at the trial of the substantive crime." I.C. § 19–2520. The requirement applies to those who "displayed, used, threatened, or attempted to use" a deadly weapon. *Id.*

Here, the use of the weapon was separately charged. The original information charged Hernandez with committing an aggravated battery by repeatedly stabbing Galvan with a knife. The information also notified Hernandez that the prosecutor intended to seek an enhanced penalty under I.C. § 19–2520 for use of a deadly weapon. The information was amended to state that Hernandez stabbed Galvan with "a knife or other instrument" in violation of I.C. §§ 18–903(a) and 18–907(b). Again, an enhanced sentence for use of a deadly weapon was sought, as was a finding that Hernandez was a persistent violator.

Our next question is whether I.C. § 19–2520 requires the use of a deadly weapon to be "separately found" by the jury. We point out that the statute does not use the language Hernandez proposes. Instead, the statute provides that the use of the weapon must be "admitted by the accused or found to be true by the trier of fact at the trial of the substantive crime." I.C. § 19–2520. In this case, we interpret this language to mean that the statute is satisfied when the trier of fact finds the defendant guilty of using a firearm or deadly weapon as an essential part of the crime. The trial court reached a similar conclusion when it stated that

> the enhancement provision will automatically be enforced in the event that the jury convicts the defendant of aggravated battery because under the [jury] instructions, one of the requirements of aggravated battery is the fact that this battery was done with a deadly weapon. Therefore, the jury could not find him guilty of aggravated battery beyond a reasonable doubt without finding a deadly weapon being used. Therefore, the court at this time will not instruct the jury on enhancement and have the jury go out in a useless act of finding the defendant guilty of use of a firearm or use of a deadly weapon, because the jury has already made that finding or will have already made that finding if in fact the defendant is convicted of aggravated battery.

In *State v. Baruth,* 107 Idaho 651, 691 P.2d 1266 (Ct.App.1984), an enhanced sentence was sought for use of a firearm during a robbery. This Court held that the predecessor to I.C. § 19–2520 was amended to its current form to "require both a separate allegation and a special finding by the trier of fact that the defendant used a firearm." 107 Idaho at 659, 691 P.2d at 1274. In *State v. Stedtfeld,* 108 Idaho 695, 701 P.2d 315 (Ct.App.1985), this Court very briefly discussed I.C. § 19–2520 while addressing whether an allegation of use of a firearm in a robbery should be tried immediately after, but not concurrently with, the underlying offense. In our discussion, this Court cited *Baruth* and stated that I.C. § 19–2520 "has been construed to require a specific finding by the jury that a firearm was used in the commission of a crime." We also stated that there may be merit in the argument that a defendant should have an opportunity to be heard separately regarding the firearm allegation because "a defendant might wish to remain silent on the crime charged but testify concerning

the alleged use of a firearm." *Stedtfeld, supra,* 108 Idaho at 698, 701 P.2d at 319.

Although we adhere to the sound reasoning in *Baruth* and *Stedtfeld,* their holdings are not directly applicable here. They were robbery prosecutions that did not require proof of use of a firearm or deadly weapon as an essential element of the crime, as was required in the instant case. To be clear on the subject, we also note that *Baruth* and *Stedtfeld* address use of firearms, not other deadly weapons. However, the statute treats both types of weapons essentially the same.

■ Section 19–2520 is designed to provide fair notice to the defendant that the state intends to seek a sentence enhancement and provides a mechanism for enhancement if a deadly weapon is used. In *Baruth,* we held that the previous version of I.C. § 19–2520 implied that the use of a firearm or a deadly weapon is a question of fact for the trier of fact. We do not detour from that conclusion here. In the instant case, Hernandez' use of a deadly weapon was an essential element of the aggravated battery charge. Although the jury instructions were not made part of the record on appeal, the trial transcript indicates that the jury was affirmatively instructed that, to convict Hernandez, it must find that he used a deadly weapon. Thus, we hold that where the use of a firearm or deadly weapon is an essential element of the crime for which a defendant is charged and he is found guilty, the jury has already made its factual determination as to whether the particular weapon has been used, and the judge need not submit the issue to the jury for a special finding to determine whether a firearm or deadly weapon was used.[3] Courts in at least two other jurisdictions have reached similar conclusions. *See*

*State v. Overfelt,* 457 So.2d 1385 (Fla.App. 1984); *State v. Tosatto,* 107 Ariz. 231, 485 P.2d 556 (1971), *cert. denied,* 404 U.S. 957, 92 S.Ct. 325, 30 L.Ed.2d 274 (1971).

### 4. Double Jeopardy

■ Hernandez argues that the sentence enhancement imposed for use of a deadly weapon during an aggravated battery violated state and federal prohibitions against double jeopardy. This Court has ruled that a sentence imposed for conviction of a crime, then enhanced for the use of a firearm during the crime, does not violate a defendant's right to be free from double jeopardy. *State v. Galaviz,* 104 Idaho 328, 658 P.2d 999 (Ct.App.1983), *citing Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). *See also State v. Cootz,* 110 Idaho 807, 718 P.2d 1245 (Ct. App.1986). The enhancement is equally valid if a deadly weapon other than a firearm was used.

### 5. Sentence

Finally, Hernandez suggests that his sentence may be excessive but represents that he is unable to make a more positive argument in that regard because the court erroneously did not articulate the amount by which the sentence was increased because of the jury's finding that he was a persistent violator. We find no merit to this position.

■ In this case, the trial judge relied on *State v. Pierce,* 107 Idaho 96, 685 P.2d 837 (Ct.App.1984), when he determined that he need not delineate what portion of Hernandez' sentence would be ascribed to the persistent violator finding. In *Pierce,* we held that I.C. § 19–2514 does not constitute a separate offense but provides for a great-

---

**3.** In cases where use of a firearm or deadly weapon is not an essential element of the crime charged, we read I.C. § 19–2520 to require both a separate allegation in the pleadings and a separate finding by the trier of fact that such a weapon was used. Our interpretation is based on the fact that there may be any one of several grounds on which a defendant could be convicted of a particular offense, many of which may not include use of a prohibited weapon. A blunt finding of guilty on a verdict form may

not indicate the grounds for conviction or whether a particular weapon was used. *See Whitehead v. State,* 446 So.2d 194 (Fla.App. 1984). Importantly, our holding does not denigrate the concern in *Stedtfeld* that a defendant may want to be heard separately regarding alleged weapon use in cases where he has not had that opportunity at trial because the allegation was not an essential element of the crime charged.

er penalty upon conviction of a third felony than might have been imposed for that felony alone. *Pierce, supra,* 107 Idaho at 107, 685 P.2d at 848. Persistent violator status simply broadens a judge's sentencing options. *State v. Smith,* 116 Idaho 553, 559, 777 P.2d 1226, 1232 (Ct.App.1989); I.C. § 19–2514. This Court in *Pierce* held that the defendant should not have been given one thirty-year sentence for armed robbery and a second concurrent thirty-year term for being a persistent violator. The Court stated, "[t]his penalty is embodied in one sentence upon the felony," and held that the sentence should be corrected to state that Pierce, having been adjudicated a persistent violator, was given a single thirty-year indeterminate sentence for the robbery. *Pierce,* 107 Idaho at 107, 685 P.2d at 848. Based on *Pierce,* we agree with the trial court that the portion of Hernandez' sentence which reflects the finding that he was a persistent violator need not be separately identified.

■ We do not otherwise find Hernandez' sentence to be unreasonable or excessive. He has not provided a copy of the presentence investigation report nor a transcript of the sentencing hearing for our review. The record shows, however, that he had at least three, and perhaps as many as five, prior felony convictions. Given that record and the serious injuries sustained by the victim in the stabbing attack, we conclude that the district court did not abuse its discretion by imposing a sentence of twenty-one years, with a minimum period of seven years' confinement, for the aggravated battery in light of Hernandez' status as a persistent violator and enhanced for the use of a deadly weapon. In reaching this conclusion, we have applied the well-settled standards of sentence review set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982) and *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989).

### Conclusion

We hold that the trial court made no evidentiary errors when it admitted Galvan's testimony concerning the threatening letters and there was sufficient evidence to support the verdict that Hernandez used a deadly weapon. Because the use of a deadly weapon was an essential element of the aggravated battery charge and the jury found Hernandez guilty of the charge, the court was not required to submit the issue of the alleged weapon use to the jury for a second, identical finding. Further, the enhanced sentence for using a deadly weapon during the crime did not violate any prohibitions against double jeopardy. Finally, the court did not err when it sentenced Hernandez and declined to apportion any period of the sentence to the jury's finding that Hernandez was a persistent violator. For the foregoing reasons, we affirm the judgment and sentence.

SWANSTROM and SILAK, JJ., concur.