[Crim. No. 13256. Third Dist. Apr. 30, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN EDWARD TAYLOR, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and IV.

**COUNSEL**

Andrew V. Alder, under appointment by the Court of Appeal, Haight & Lieberman and Gregory Lawrence for Defendant and Appellant.

John K. Van de Kamp, Attorney General, James T. McNally, Thomas R. Yanger and Susan Rankin Bunting, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CARR, J.**—A jury convicted defendant of the rape of a mentally incompetent person. (Pen. Code, § 261, subd. (1).)[1] He appeals, contending: (1) insufficiency of the evidence; (2) error in the denial of his motion for a psychiatric examination of the victim; (3) hearsay evidence was erroneously admitted; (4) error in admitting evidence of an uncharged act; and (5) his motion to introduce evidence of his reputation for truth and veracity was erroneously denied. We conclude the last contention has merit, and in this close case where credibility was the key issue, that the error requires reversal.

FACTS

Defendant was employed as an orderly at the Laurel Hills Developmental Living Center for developmentally handicapped persons. The Center consists of three residential buildings: the main building, Sierra Cottage and Foothill Cottage. One hundred fourteen persons reside at the center. A school for handicapped students, the Laurel Ruff Center, is located adjacent to Laurel Hills. Prior to the incident in question, defendant had been employed at Laurel Hills for approximately eight months.

On the morning of September 13, 1982, defendant was assigned to work in Foothill Cottage, where the "highest functioning" persons live. That morning, three of the residents of Foothill Cottage were 21-year-old Dawn

---

[1] This was the second trial on the same charge. The first trial ended in a mistrial when the jury was unable to reach a verdict.

(the victim), 22-year-old Amy and 22-year-old Nancy. Dawn testified that after breakfast she was in her bedroom writing a letter to her mother. Her roommate, Amy, was watching television. Defendant entered the room, took her pen and asked her to go into the bathroom. Once in the bathroom, defendant lifted her up onto the counter and pulled down her pants and panties. Defendant then pulled down his own pants and underwear and kissed Dawn on the mouth and breasts. Defendant placed Dawn's legs on his shoulders and accomplished an act of sexual intercourse. Dawn testified Amy and Nancy witnessed this act. Defendant told Dawn not to say anything.

On cross-examination, Dawn testified she screamed before defendant took her to the bathroom. Moreover, defendant pinned her on her bed and hit her. She then testified that all that happened on the morning in question was the defendant brought her toilet paper, at her request, and handed it to her as she stood with her pants down by the toilet. She further testified that Amy, who talked about sex all the time, told her how the incident happened. She agreed "[i]t all came from Amy," and indicated she "must be making up a lie."

Amy testified she saw the act of sexual intercourse occur in the bathroom and that she had seen a television program the previous evening in which a man who looked like defendant attacked a girl. Amy agreed the program upset her and she thought about it a lot.

Nancy testified to a similar incident with defendant; that she was in the bathroom with Dawn when defendant lifted her (Nancy) onto the counter. He then touched Nancy on the breast and pubic area on top of her clothes. Further that she saw defendant lift Dawn onto the counter. She was in the television room and she saw defendant touch Dawn between the legs beneath her clothes. Defendant's pants were down at the time. Nancy left the room because she did not want to see anything happen to Dawn.

Defendant's version of the incident corresponded to that elicited from Dawn on cross-examination. He was in the laundry room when Dawn approached him. She complained there was no toilet paper in the bathroom. Defendant accompanied Dawn to the bathroom and ascertained she was correct. They went to the nurses' station to locate some toilet paper. Finding none there, defendant asked Dawn to wait. He found some in the staff bathroom and returned to the nurses' station, but Dawn had left. He proceeded to the girls' hall and called for Dawn. She answered from the bathroom. Defendant entered and saw Dawn standing next to the toilet with her pants down, stuttering that there was no toilet paper. Defendant handed the roll to Dawn, told her to get ready for school and left.

Dawn attended school on the 13th. She did not report the incident to her teacher, Judy Eberlein, and Ms. Eberlein noticed nothing unusual about Dawn. About 9:30 p.m. that evening, a Laurel Hills counselor, Beth Von Striver, went in to say "goodnight" to Dawn and Amy. The girls looked at one another and then Dawn said she had something to tell her. Both girls began to recount the incident in a loud, excited manner. After talking to the girls separately, the police were called and Dawn was taken to a hospital. A physician attempted to conduct a rape examination on Dawn. Dawn did not cooperate, however, because of what appeared to be acute embarrassment and the doctor was unable to determine whether or not a sexual assault had occurred.

There was extensive testimony concerning Dawn's developmental disability. Although her chronological age was twenty-one, Dawn had the mental age of a seven- to eight-year-old. The numerous intelligence tests given to Dawn throughout her life generally showed her to be in the moderate range of mental retardation. Asking questions which call for a "yes" or "no" answer of a person with this degree of retardation may result in inaccurate answers, because there are no explanatory words to indicate the person has understood the question. In Dawn's case, she might guess at an answer she did not know, hoping to give the answer she thought the questioner wanted to hear. Dawn had not been taught anything about sexual intercourse prior to the incident. She was often overly and inappropriately affectionate. The expert opinions differed on whether Dawn was mentally capable of consenting to a sexual act.[2]

I

Initially we consider defendant's contention of error in denying admission of his proferred reputation evidence as our conclusion on this issue is dispositive of the case. Defendant urges the trial court erred in refusing to allow him to present evidence of his reputation in the community for truth and veracity. He relies on Evidence Code section 1102 and on article I, section 28, subdivision (d) of the California Constitution,[3] referred to hereafter as section 28(d). We conclude the latter provision mandates the admissibility of this evidence and the trial court's ruling denying admission was error.

---

[2]The expert called by the People testified Dawn would not have the mental capacity to knowingly consent to such an act. The defense expert opined there was insufficient evidence to reach a conclusion on Dawn's mental ability to consent.

[3]As the instant offense was committed after the effective date of article I, section 28, subdivision (d), its provisions are applicable to this case. (*People* v. *Smith* (1983) 34 Cal.3d 251, 262 [193 Cal.Rptr. 692, 667 P.2d 149].)

However, the defendant's reliance on Evidence Code section 1102 is unavailing. At trial defendant eschewed reliance on this section[4] and cannot now assert it as a viable ground for admission of the disputed testimony.

Moreover, Evidence Code section 1102 does not support defendant's position. Section 1102, as pertinent, provides: "In a criminal action, evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation is not made inadmissible by Section 1101 if such evidence is: [¶] (a) Offered by the defendant to prove his conduct in conformity with such character or trait of character. [¶] (b) Offered by the prosecution to rebut evidence adduced by the defendant under subdivision (a)." ■ The character evidence permitted a defendant under section 1102 is limited to evidence of the character or trait of character relevant to the offense charged. (2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) p. 1181.) Defendant's reputation for truth was relevant not to the elements of the rape itself, but only on the issue of whether he was testifying truthfully.

At trial, defendant asserted a right to admission of such reputation testimony under section 780 of the Evidence Code, which permits "[e]xcept as otherwise provided by statute" the court or jury to consider in determining the credibility of a witness, among other factors, "his character for honesty or veracity or their opposites." (Evid. Code, § 780, subd. (e).) Evidence relating to the credibility of a witness is relevant evidence. (Evid. Code, § 210.) ■ Unless precluded by statute, any evidence is admissible to support or attack the credibility of a witness if it establishes a fact that has any tendency in reason to prove or disprove the truthfulness of the witness' testimony. (2 Jefferson, Cal. Evidence Benchbook, *supra*, at pp. 844-845.) Evidence Code section 780 "is a general catalog of those matters that have any tendency in reason to affect the credibility of a witness", including his or her "character for honesty or veracity or their opposites." (Cal. Law Revision Com. com. to Evid. Code, § 780, 29B West's Ann. Evid. Code (1966 ed.) p. 280, Deering's Ann. Evid. Code (1966 ed.) p. 196.) The rationale for allowing evidence of a witness' character for honesty or veracity is that it is logical to conclude the witness will act in conformity with his or her character for honesty or dishonesty while testifying on the stand. (2 Jefferson, Cal. Evidence Benchbook, *supra*, at p. 873.)

However, Evidence Code section 790 is an exception to section 780 "otherwise provided by statute." It provides: "Evidence of the good character of a witness·is inadmissible to support his credibility unless evidence

---

[4]Defense counsel stated, "I'm not talking about 1100 Section of the Code . . . [w]hich is a separate problem."

of his bad character has been admitted for the purpose of attacking credibility." The prosecution produced no evidence of defendant's bad character; hence, the evidence of defendant's good character for truth and veracity was inadmissible under Evidence Code section 790.

■ Evidence Code section 790 does not render evidence in support of defendant's credibility irrelevant; it simply restricts its admissibility. The basis for this restriction is that "[u]nless the credibility of a witness is put in issue by an attack impugning his character for honesty or veracity . . . evidence of the witness' good character admitted merely to support his credibility introduces collateral material that is unnecessary to a proper determination of any legitimate issue in the action." (Cal. Law Revision Com. com. to Evidence Code, § 790, 29B West's Ann. Evid. Code, *supra,* pp. 370-371, Deering's Ann. Evid. Code (1966 ed.) p. 327.) A sworn witness is assumed to be telling the truth, and until the witness has been impeached, it is theorized, there is no need to rehabilitate his or her credibility with evidence of good character for truth and veracity. (2 Jefferson, Cal. Evidence Benchbook, *supra,* at p. 960; see Comment, *Impeaching and Rehabilitating a Witness With Character Evidence: Reputation, Opinion, Specific Acts and Prior Convictions* (1976) 9 U.C. Davis L.Rev. 319, 361 (hereafter referred to as *Impeaching With Character Evidence*).) The introduction of evidence of good character prior to impeachment "is thus deemed cumulative, hence minimally probative, consumptive of time and distracting to the trier of fact." (*Impeaching With Character Evidence, supra,* at p. 361.)

This restriction on admissibility existed before the enactment of the Evidence Code, at which time the rule was embodied in former Code of Civil Procedure section 2053, and the courts have somewhat consistently prohibited the admission of evidence of good character for truth and honesty in the absence of prior evidence of bad character for such traits. (See *People v. Sweeney* (1960) 55 Cal.2d 27, 38-39 [9 Cal.Rptr. 793, 357 P.2d 1049]; *Title Insurance etc. Co.* v. *Ingersoll* (1908) 153 Cal. 1, 7-9 [94 P. 94]; *People* v. *Bush* (1884) 65 Cal. 129, 131-132 [3 P. 590]; *People* v. *Sellas* (1931) 114 Cal.App.367, 372-377 [300 P. 150]; *People* v. *Frank* (1925) 71 Cal.App. 575, 580 [236 P. 189]; *People* v. *McMillan* (1922) 59 Cal.App. 785, 786-787 [212 P. 38].) ■ Under these decisions, a witness' credibility is not impeached as to allow evidence of good character solely by the fact that testimony of other witnesses contradicts that of the witness in question. (*People* v. *Sweeney, supra,* 55 Cal.2d at p. 39; *People* v. *Sellas, supra,* 114 Cal.App. at p. 376; *People* v. *McMillan, supra,* 59 Cal.App. at pp. 786-787.) Only when the *character* of a witness for truth and honesty

is attacked may good character evidence be introduced. *(Title Insurance etc. Co. v. Ingersoll, supra,* 153 Cal. at pp. 7-8.)

■ It is also well established, however, that when a defendant in a criminal prosecution takes the stand and denies his guilt he puts in issue his reputation for truth and honesty and subjects himself to the rules for testing credibility. *(People v. Lima* (1954) 127 Cal.App.2d 29, 33 [273 P.2d 268]; *People v. Gordon* (1928) 206 Cal. 29, 34 [273 P. 568].) ■ In this case, the question of credibility was not collateral but critical. As the prosecutor acknowledged, the *only* issue in this case was credibility. Far from being "unnecessary to a proper determination" of this issue, the proffered reputation evidence was the only support available to defendant for his version of the facts, other than the conflicting testimony elicited from Dawn on cross-examination. By its ruling, the trial court excluded relevant evidence from consideration by the jury on the assumption Evidence Code section 790 is still viable.

With the enactment of the "Right to Truth-in-Evidence" provision of Proposition 8, the California Constitution now commands that "relevant evidence shall not be excluded in any criminal proceedings . . ." ■ Constitutional provisions adopted by the People are to be interpreted so as to effectuate the voters' intent, and if the intent is clear from the language used, there is no room for further judicial interpretation. *(People v. Callegri* (1984) 154 Cal.App.3d 856, 867 [202 Cal.Rptr. 109].) ■ As our Supreme Court observed, the "clearly stated command [of section 28(d)] has only one apparent meaning"; that is "[t]he express intent of section 28(d) is to insure that all relevant evidence be admitted." *(In re Lance W.* (1985) 37 Cal.3d 873, 886, 889 [210 Cal.Rptr. 631, 694 P.2d 744].) ■ It is impossible to reconcile the language of section 28(d) with a construction which allows for the continued viability of Evidence Code section 790 in criminal proceedings. "'"When statutory language is thus clear and un-ambiguous there is no need for construction, and courts should not indulge in it." [Citation.]'" *(Id.,* at p. 886.) ■ The purpose of the voters to admit all relevant evidence, subject to express exceptions, "cannot be ef-fectuated if the judiciary is free to adopt exclusionary rules that are not authorized by statute or mandated by the Constitution." *(Id.,* at p. 889.)

Even looking beyond the plain language of section 28(d), we perceive no conflict with the apparent intent of the voters in repealing Evidence Code section 790 in criminal cases. In subdivision (a) of section 28, it is declared that the purpose of "The Victims' Bill of Rights" is, in part, to protect the victims of crimes by insuring "that persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished . . . ." (Cal. Const., art. I,

§ 28, subd. (a).) Toward this end, section 28(d), according to the ballot argument in favor of Proposition 8,[5] was intended to correct a perceived imbalance in favor of defendants in the rules regarding admissibility of evidence. (Ballot Pamp., Proposed Amends. to Cal. Const., Primary Elec. (June 8, 1982) pp. 34-35.) There was no intent, however, to convict the innocent. Section 28(d) was not designed to liberalize the rules of admissibility only for evidence favorable to the prosecution while retaining restrictions on the admissibility of evidence tending to prove a defendant's innocence, but to ensure that those who are actually guilty do not escape conviction through restrictions on the admissibility of relevant evidence. If section 28(d) has the effect of admitting evidence favorable to defendant that would previously have been excluded, it is attributable to the plain language used by the drafters, and not to our construction of the provision. (*In re Lance W., supra*, 37 Cal.3d, at p. 887, fn. 7.)

 Accordingly, by constitutional command, we hold evidence of defendant's reputation for truth and veracity was admissible at trial for the purpose of proving the truthfulness of his testimony, notwithstanding that the prosecution did not first introduce evidence impeaching defendant's character for truth and veracity.

We recognize this opinion raises many questions and has potential implications far beyond its particular holding. For example, does section 28(d) repeal Evidence Code section 786, which prohibits the admission of character evidence to attack or support credibility other than the witness' character for honesty and veracity? Or section 787, which prohibits evidence of specific instances of a witness' conduct to prove character in support or derogation of credibility? How does section 28(d) affect the general rules of evidence with respect to character? (Evid. Code, §§ 1100-1103.)

We leave these questions for another day or another court. Our holding is limited solely to Evidence Code section 790; that is, evidence of the good character of a witness for truth and honesty to support his or her credibility is not inadmissible solely because evidence of the witness' bad character has not been introduced to impeach his or her credibility.

The People concede the enactment of section 28(d) has repealed Evidence Code section 790 in criminal cases, but contend there was no repeal of Evidence Code section 352,[6] which permits the trial court discretion to

---

[5]Ballot summaries and arguments are an appropriate means by which to ascertain the voters' intent in enacting an initiative measure. (*In re Lance W., supra*, 37 Cal.3d at p. 888, fn. 8.)

[6]Section 28(d) provides in pertinent part: "Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections *352, 782* or *1103*." (Italics added.)

exclude evidence if its probative value is outweighed by the risk of undue consumption of time or misleading the jury. The rationale behind Evidence Code section 790 may be found in Evidence Code section 352, the People urge, and therefore the trial court did not err in exercising its discretion to exclude what is characterized as marginally relevant evidence. We agree the court retains discretion under section 352 to exclude evidence in support of a witness' credibility where it meets the criteria set forth therein. (*People v. Castro* (1985) 38 Cal.3d 301, 305 [211 Cal.Rptr. 719, 696 P.2d 111].) We disagree, however, that in this case the evidence in question was excludable under section 352.

Initially, nothing in the record suggests the trial court exercised the discretion accorded it by Evidence Code section 352. In seeking the admission of the reputation evidence, the defense cited Evidence Code sections 780 and 785. The prosecution countered with the substance of section 790. The trial court then excluded the evidence. There is no indication in the record that section 352 was even considered. Further, "[t]he discretion granted the trial court by section 352 is not absolute and must be exercised reasonably in accord with the facts before the court." (*People v. Mascarenas* (1971) 21 Cal.App.3d 660, 667 [98 Cal.Rptr. 728].) Under the present facts, it would be an abuse of discretion to exclude the proffered evidence under section 352. The defendant's credibility was highly relevant to the case. The jury heard extensive psychiatric testimony concerning the victim's mental abilities, particularly her ability to answer questions truthfully, to make up stories, and to understand what had happened to her. The jury was deprived, however, of any extrinsic evidence relating to defendant's credibility. The proposed evidence consisted of brief statements by several witnesses concerning defendant's reputation for credibility. The risk of undue consumption of time in a trial which took 10 days was minimal. The risk of confusing the jury was even smaller. The primary task facing the jury was assessing credibility. Evidence of defendant's reputation in this regard could only assist the jury in this determination.

■ We now must determine if the error was prejudicial. The defense theory was that the victim, Amy and Nancy on the previous day had seen a television program involving a rape and thereafter concocted a fantasy in which defendant was the rapist. The purported instigator was Amy. To rebut this alleged baseless story, the defense attempted to recount defendant's actions of September 13 almost by the minute. In argument, the prosecutor urged it was unlikely that a person could remember numerous events of a day long past down to the minute and that defendant's story was contrived. Further, that the victim and her friends were simply not capable of making up and agreeing upon such an elaborate story. That the case hinged on a

credibility contest between Dawn and the defendant is demonstrated by the jury's request for the reading of their respective testimony during deliberations. Moreover, this contest was extremely close. Dawn's testimony was compelling, but contained serious contradictions, inconsistencies and improbabilities (e.g., the screaming and hitting) and her answers were seemingly dependent on whether she was under direct or cross-examination. The defendant's testimony, on the other hand, was precise and detailed, but uncorroborated. It is a reasonable inference that extrinsic evidence of Dawn's inability to invent such a story was the determinative factor in the jury's decision. We conclude that had the competing extrinsic evidence from the defendant's pastor, employer and friends of defendant's reputation for truth and veracity been admitted, it is a reasonable probability that the jury would have found for defendant. Considering the entire record, including the first trial having ended with the jury unable to reach a verdict, we are of the opinion it is reasonably probable a result more favorable to defendant would have been reached in the absence of the error (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) and the judgment should be reversed.

II*

. . . . . . . . . . . . . . . . . . . . .

III

Defendant contends the trial court erred in denying his motion for a psychiatric examination of Dawn. He concedes that Penal Code section 1112 prohibits the trial court from ordering such an examination for the purpose of assessing the credibility of the complaining witness.[7] He urges the purpose of the examination sought was to determine whether Dawn suffered from "lunacy or other unsoundness of mind," or whether she was capable of consenting to an act of sexual intercourse. Penal Code section 1112 does not apply in these circumstances, he contends, and section 28(d) compelled the trial court to grant his motion.

 To the extent that defendant's motion requested a psychiatric examination for purposes other than prohibited by Penal Code section 1112, Proposition 8 has no application. Defendant was essentially making a discovery motion, grounded on *Ballard* v. *Superior Court* (1966) 64 Cal.2d

---

*See footnote, *ante,* page 622.

[7]Penal Code section 1112 provides in relevant part: "[T]he trial court shall not order any prosecuting witness, complaining witness, or any other witness, or victim in any sexual assault prosecution to submit to a psychiatrict or psychological examination for the purpose of assessing his or her credibility."

159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]. Section 28(d) prohibits the exclusion of relevant *evidence*. It does not compel the trial court to order discovery so that defendant may obtain such evidence. *Ballard* was legislatively overruled by Penal Code section 1112, when the purpose of the examination was to assess credibility (see *People* v. *Haskett* (1982) 30 Cal.3d 841, 859, fn. 7 [180 Cal.Rptr. 640, 640 P.2d 776]), but *Ballard's* holding is still viable in other circumstances. As stated therein, "[w]e therefore believe that the trial judge should be authorized to order the prosecutrix to submit to a psychiatric examination *if the circumstances indicate a necessity for an examination." (Ballard* v. *Superior Court, supra,* 64 Cal.2d at pp. 176-177.) (Italics added.) The matter was placed in the sound discretion of the trial judge. (*Id.,* at p. 177.)

In the present case, the record demonstrates Dawn had undergone extensive psychiatric testing from 1967 through the time of trial. The most recent Stanford-Binet Intelligence test, the type requested by defendant, was conducted January 27, 1983, approximately six months prior to trial. The trial court was justified in finding this extensive psychiatric record was adequate and obviated the necessity of independent tests by the defense. There was no abuse of discretion in refusing to order the psychiatric examination requested by defendant.

Moreover, consensual intercourse was not a defense tendered by defendant. His entire defense was that no act of intercourse occurred.

IV*

. . . . . . . . . . . . . . . . . . . . . . . . .

V

Defendant's final contention is that the trial court erred in admitting evidence of a similar attack by defendant on Nancy. He advances two claims of error. First, that there was no evidence the incident with Nancy was *prior* to the incident with Dawn; and second, that defendant's alleged conduct with Nancy was so similar to that alleged by Dawn that the story was obviously contrived and should have been excluded under Evidence Code section 352.

Defendant did not raise his "prior in time" objection below. He is therefore precluded from prevailing on that ground in this court. (Evid. Code, § 353,

---

*See footnote, *ante,* page 622.

subd. (a).) Nor is it necessary that an uncharged act be prior to the charged offense to be relevant. Evidence Code section 1101, subdivision (b) specifies no time period for admissibility.[8] Other crimes or acts are admissible to prove other than criminal disposition whether the uncharged acts were prior or subsequent in time to the charged offense. (See e.g. *People* v. *Sequeira* (1981) 126 Cal.App.3d 1, 8-9, 18-20 [179 Cal.Rptr. 249].) That Nancy's testimony is substantially more prejudicial than probative rests on the assumption that her story of a similar attack is contrived and it was within the trial court's discretion to leave the assessment of Nancy's credibility to the jury. Assuming her account was true, its probative value is high and the prejudice to defendant is only that which accompanies all damaging evidence.

More important, Evidence Code section 1101, subdivision (a) prohibits admission of other uncharged acts when offered solely to show the defendant's disposition to commit the charged acts. To circumvent this section, the prosecution successfully asserted the evidence of the uncharged acts with Nancy was admissible to show, not defendant's criminal disposition but his "intent" on the charged occasion. (Evid. Code, § 1101, subd. (b).) On appeal, the People cite *People* v. *Tassell* (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1] as relevant and attempt to distinguish it.

In *Tassell*, the prosecuting witness testified the defendant forced her to submit to certain sexual acts; the defendant testified the acts were consensual. (*People* v. *Tassell, supra*, 36 Cal.3d at pp. 80-82.) Evidence of two prior sex offenses was admitted. On appeal, the People argued the evidence was proper to show a "'common design or plan.'" (*Id.*, at p. 83.) The Supreme Court disagreed and held that three sets of sex crimes committed years apart were not a part of one larger plan. The People's theory was "merely a euphemism for 'disposition'". (*Id.*, at p. 89.) The court further noted the evidence was not admissible to show identity or intent, since those issues were not raised in the case (*id.*, at p. 88, fn. 7 and accompanying text), and the evidence was erroneously admitted. (*Id.*, at p. 89.)

The People urge *Tassell* is inapposite on several grounds: (1) that both identity and intent *were* in issue in the present case; (2) that *Tassell* should

---

[8]Evidence Code section 1101 provides: "(a) Except as provided in this section and in Sections 1102 and 1103, evidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion. [¶] (b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts. [¶] (c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of a witness."

not be applied retroactively and (3) in any event, the enactment of Proposition 8 nullified the ruling in *Tassell*. The first two assertions are without merit.

Neither identity nor intent were issues in this case. Defendant did not contest being in the bathroom with Dawn, nor was his intent relevant if an act of sexual intercourse occurred there. The only issue was whether sexual intercourse actually took place between Dawn and defendant. *Tassell* may have changed an established evidentiary rule with respect to evidence of a common scheme or plan (and thus applied only prospectively), but it did not alter the rule that evidence of other crimes is not admissible on issues which are *not in dispute*. (*People* v. *Tassell, supra,* 36 Cal.3d at pp. 88-89.) *Tassell* cited *People* v. *Kelley* (1967) 66 Cal.2d 232 [57 Cal.Rptr. 363, 424 P.2d 947], for the holding that uncharged sex offenses are admissible to show intent only where the defendant's intent is in issue. "Such evidence is admissible in cases where the proof of defendant's intent is ambiguous, as when he admits the acts and denies the necessary intent because of mistake or accident. [Citations.] But where the acts, if committed, indisputably show an evil intent and the defendant does not specifically raise the issue of intent, the better reasoned cases hold that evidence of other crimes is admissible only when they were performed with the prosecuting witness [citation], or where the offenses are not too remote and are similar to the offense charged and are committed with persons similar to the prosecuting witness. Then they are admissible as showing a common scheme or plan." (*People* v. *Kelley, supra,* 66 Cal.2d at pp. 242-243.)

*Tassell* implies that *Kelley* may have defined the "common scheme or plan" too broadly, but *Kelley* aptly illustrates the error in the present case. The charged offense required an act of sexual intercourse, with a person not the spouse of the perpetrator, where the victim is incapable, by reason of mental disease or defect, of giving consent. (See former Pen. Code, § 261 subd. (1).) If defendant intentionally did the act, his "evil intent" (i.e. general criminal intent) was indisputably shown. Nor did defendant specifically raise the issue of intent. Accordingly, the evidence of the uncharged acts with Nancy should not have been admitted to show defendant's "intent". The prosecutor's theory of "intent" was but a euphemism for proving that defendant committed the act by showing his general disposition to commit similar crimes. (See *People* v. *Alcala* (1984) 36 Cal.3d 604, 634 [205 Cal.Rptr. 775, 685 P.2d 1126].)

However, as noted in *Kelley*, if the uncharged acts are not too remote in time, are similar to the offense charged and are committed with persons similar to the prosecuting witness, they may show a common scheme or plan. (*People* v. *Kelley, supra,* 66 Cal.2d at p. 243.) Squaring this

language with *Tassell,* the offenses must be so close in time as to all be "part of one larger plan." (*People* v. *Tassell, supra,* 36 Cal.3d at p. 89.) In the present case, the evidence supports an inference that defendant's plan was to enter Dawn and Amy's room and sexually assault one of the occupants. Having failed with Nancy, he accomplished the act with Dawn. The evidence of uncharged acts was properly admitted under Evidence Code section 1101, subdivision (b), albeit for the wrong reason. (*People* v. *Evans* (1967) 249 Cal.App.2d 254, 257 [57 Cal.Rptr. 276].)

Our conclusion renders it unnecessary for us to consider the effect of Proposition 8 on the admissibility of evidence of other uncharged offenses. (Cal. Const. art. I, § 28, subd. (d); see *People* v. *Tassell, supra,* 36 Cal.3d at pp. 96-97 (dis. opn. of Richardson, J.).)

*Disposition*

The judgment is reversed.

Puglia, P. J., and Sparks, J., concurred.