653 A.2d 452

Isa SAHIN

v.

STATE of Maryland.

No. 31, Sept. Term, 1994.

Court of Appeals of Maryland.

Feb. 8, 1995.

Geraldine Kenney Sweeney, Asst. Public Defender (Sherrie B. Glasser, Asst. Public Defender, Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Kimberly Smith Ward, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, BELL, RAKER and JOHN F. McAULIFFE (Retired, Specially Assigned), JJ.

CHASANOW, Judge.

This appeal requires that we decide the appropriateness of calling character witnesses to testify to a criminal defendant's good reputation for truthfulness. For the reasons indicated, we depart from the majority rule, and we hold that a criminal defendant on trial for a veracity impeaching offense [1] may, after testifying, offer evidence of his or her good character for truthfulness.

## I.

The defendant Isa Sahin, an American immigrant of Turkish descent, was arrested and charged with four counts each of distribution of cocaine and lesser included offenses. After a jury trial before the Honorable Martin A. Wolff of the Circuit Court for Anne Arundel County, Sahin was convicted of the four counts of distribution of cocaine and sentenced to serve four concurrent three year terms of incarceration. The princi-

---

1. By veracity impeaching offenses, we mean infamous crimes or other crimes relevant to credibility as used in Maryland Rule 5–609. That is, those crimes which are so relevant to credibility that convictions of the crime may be used to attack the credibility of a witness.

pal testimony at trial was given by a vice detective of the Anne Arundel County Police Department. He asserted that he and an informant made four purchases of cocaine from Sahin between June 29, 1992 and July 1, 1992. The officer testified that the only persons present during the transactions were himself, the defendant, and the informant. The informant was not called to testify. Upon conclusion of the last sale, the vice detective arranged to make one more purchase which was to occur the following day. On that date, officers returned with a search warrant for defendant's residence. The warrant authorized a search for controlled dangerous substances, drug paraphernalia, books and records detailing drug transactions, telephone numbers, address books, and photographs of associates related to the sale of drugs. None of the suspected items were recovered during the execution of the warrant. The inculpatory evidence retrieved from defendant's residence consisted of two fifty dollar bills and one twenty dollar bill, the serial numbers of which allegedly matched the serial numbers of the bills used by the vice detective for the undercover purchases. The bills were recovered by the vice detective from the pocket of a pair of pants located in an unused room on the second floor. Additionally, eighteen dollars was discovered in a pocket of a pair of pants located in a room later identified as the defendant's bedroom. The money recovered from defendant's residence was not available at trial as it was put back into circulation by the Anne Arundel County Police Department. When questioned as to whether the pants containing the "marked" bills fit the defendant, the officer responded that he did not know.

In his own defense, Sahin took the stand and testified, through an interpreter, that unusual happenings occurred at his residence while he was away working two jobs. Sahin contends that a back door which he never used was often ajar, strange cigarette butts were found in his ashtray, and his dining room table had been moved on multiple occasions. He further alleged that his friend, Ms. Corrine Boston, who was present with him when the search warrant was executed, visited his residence on several prior occasions. Defendant

suggested that Ms. Boston and/or an acquaintance may have used his residence to sell the illegal narcotics. Sahin testified that he did not know the vice detective or the informant, and he vehemently denied the detective's allegations. Sahin asserted that he has never sold drugs to anyone and that he has never been convicted of any crime. When questioned about the pants, Sahin testified that he didn't keep clothes in any room other than his bedroom. He also testified that he did not know to whom the pants belonged. In support of his theory that someone else had used his residence, Sahin testified that he had recently moved into the home and that he did not know if anyone else had a key or access to the residence.

After Sahin's testimony, defense counsel attempted to call two of Sahin's former employers as character witnesses who would testify that the defendant had a good reputation for truthfulness. The court allowed one of the witnesses to testify as to the length and nature of the relationship with the defendant but disallowed any evidence as to Sahin's reputation for truthfulness. Weather conditions in New York City prevented the second witness from appearing and testifying on the day of trial, but the trial judge accepted a proffer at the bench that the witness would also testify to Sahin's good character for truthfulness. The trial court excluded the character evidence on two grounds. First, the court reasoned that truthfulness was not a relevant character trait of one accused of selling narcotics and that testimony to that respect was therefore inadmissible. Additionally, the court held that character evidence offered to bolster the credibility of a witness is inadmissible until such time that that witness's character is attacked or challenged and merely being charged with distribution of cocaine and related offenses was not an attack on veracity. In closing argument, both the defense and the prosecution agreed that "this case hinges on who do you believe. Do you believe [the vice detective or] do you believe Isa Sahin, the Defendant." The defense suggested it was either a case of mistaken identity or the charges were manufactured by the officer to account for the $720.00 in police department funds he received and allegedly gave to the defen-

dant in exchange for drugs, as well as the approximately $200.00 in police department funds he allegedly paid the confidential informant during this investigation. The jury apparently believed the vice detective rather than the defendant and convicted Sahin of all charges. The defendant's convictions were affirmed by the Court of Special Appeals in an unreported opinion. We granted certiorari to consider the appropriateness of the trial court's exclusion of the character evidence.

## II.

■ Sahin's sole contention on appeal is that the lower courts erred in ruling that, after he testified at trial, he could not offer character evidence of his good reputation for truthfulness. He argues that the trial court's refusal to allow the character evidence denied him a fair trial. Sahin's first contention is based on the well established doctrine that a criminal defendant may always offer evidence of his or her good character for a trait relevant to the crime charged as circumstantial evidence of innocence. *See* 1 *McCormick on Evidence* § 191, at 812–14 (John W. Strong ed., 4th ed. 1992). He reasons from this basic rule of evidence that his character for truthfulness is pertinent to the crime of distribution of cocaine. In support of his contention, Sahin relies on *State v. Giddens,* 335 Md. 205, 217, 642 A.2d 870, 876 (1994), wherein we quoted from *United States v. Ortiz,* 553 F.2d 782, 784 (2d Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977) that " 'a narcotics trafficker lives a life of secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie.' " Sahin argues that we should extend this statement to connote that credibility is a "pertinent" character trait of the crime of distribution of narcotics. As such, Sahin contends that he should be permitted to put on character witnesses that will testify to the relevant issue of his good reputation for truthfulness and that the jury should consider this evidence when determining his guilt or innocence in relation to the crime charged.

In arguing that truthfulness is a character trait pertinent to the offense of distribution of cocaine, Sahin fails to distinguish the admissibility of evidence of a character trait relevant to the propensity of the defendant to commit the charged offense from the admissibility of evidence relevant to the untruthfulness of a witness. In defining character traits relevant to the charged offense, the Maryland Court of Special Appeals has observed " '[t]o be relevant, it is necessary that the character be confined to an attribute or trait the existence or nonexistence of which would be involved in the noncommission or commission of the particular crime charged.' " *Braxton v. State,* 11 Md.App. 435, 440, 274 A.2d 647, 650 (1971) (quoting 1 *Wharton's Criminal Evidence* § 221, at 458–59 (12th ed. 1955)). That court enumerates examples of irrelevant character traits for specific crimes:

> "It is irrelevant to show the defendant's reputation for honesty and integrity in a prosecution for adultery; for truth and veracity, or peace and quietude, in a prosecution for statutory rape; for good military conduct in a rape prosecution; for truth and veracity in a robbery prosecution; or for honesty and integrity, in a murder prosecution; for morality and sobriety in a prosecution for a false bank report entry; or for reliability in business in a prosecution for the malicious destruction of property."

11 Md.App. at 440 n. 3, 274 A.2d at 650 n. 3 (quoting 1 *Wharton's Criminal Evidence* § 221, at 460). In *Giddens,* we also cited with approval from *State v. Pierce,* 107 Idaho 96, 103, 685 P.2d 837, 844 (1984). We said: "[A]lthough [the Idaho] court said that it would be a strain to characterize delivery of heroin as a crime of dishonesty, it held that that offense 'had probative value on the question of ... credibility' because a person who has committed such a crime shows disrespect for the law and may not take an oath seriously." *Giddens,* 335 Md. at 219, 642 A.2d at 877 (quoting *Pierce,* 107 Idaho at 103, 685 P.2d at 844).

While we stated in *Giddens* that the distribution of drugs is a crime relevant to dishonesty and such a conviction is admissible for impeachment purposes, we decline to hold that good

character for truthfulness is a relevant, pertinent character trait that constitutes circumstantial evidence that the accused is unlikely to distribute drugs. *See, e.g., United States v. Jackson,* 588 F.2d 1046, 1055 (5th Cir.) (character evidence of the trait for truthfulness not relevant to the criminal charge of conspiracy to distribute heroin and not admissible as circumstantial evidence of innocence of this crime), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *Grant v. State,* 55 Md.App. 1, 39, 461 A.2d 524, 540, *cert. granted,* 466 A.2d 39 (1983), *and cert. dismissed,* 299 Md. 309, 473 A.2d 455 (1984). There exist character traits more directly relevant and pertinent to the commission or noncommission of the offense of drug dealing than character for truthfulness. *See, e.g., United States v. Angelini,* 678 F.2d 380, 381, 382 n. 1 (1st Cir.1982) (evidence of defendant's good character as a law abiding person relevant to distribution of a controlled dangerous substance, but good character for truthfulness is not relevant); *United States v. Diaz,* 961 F.2d 1417, 1419 (9th Cir.1992) (the defendant's good character for being a law abiding person and not being prone to criminal conduct is admissible in a trial for possession with intent to distribute cocaine).  The character trait for truthfulness, though it has some relevance, is not the pertinent character trait which constitutes circumstantial evidence that the defendant would be unlikely to commit the drug offenses for which he was being tried.

    The Maryland Court of Special Appeals, in *Grant,* noted that truthfulness may be a relevant character trait when the crime is one in the nature of *crimen falsi. Grant,* 55 Md.App. at 39, 461 A.2d at 542.  This Court defines *crimen falsi* as "crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense involving some element of deceitfulness, untruthfulness, or falsification bearing on witness' propensity to testify truthfully." *Wicks v. State,* 311 Md. 376, 382, 535 A.2d 459, 461–62 (1988) (citing *Black's Law Dictionary* 335 (5th ed. 1979)).  Our holding in *Giddens* asserts only that truthfulness is relevant for impeachment purposes; it does not indicate distribution of drugs is a *crimen*

*falsi* offense. It follows that, since drug dealing is not a *crimen falsi* offense, truthfulness is only indirectly a relevant character trait and this trait should not be admissible as circumstantial evidence of innocence in lieu of a more directly relevant character trait. Thus, because truthfulness is only relevant after the defendant testifies, defendants charged with drug distribution, who do not testify, may introduce their good character for being law abiding people, but not their good character for truthfulness.

Our holding that good character for truthfulness is not a character trait which would be admissible as circumstantial evidence that Sahin did not commit the crime of drug distribution does not end our inquiry. Because Sahin testified as a witness, the next issue is whether that testimony makes his character for truthfulness admissible. Maryland Rule 5-608(a), although not in effect at the time of trial, nevertheless sums up the general rule regarding any witness's character for truthfulness. That rule states in pertinent part:

> "(1) *Impeachment by a Character Witness.*—In order to attack the credibility of a witness, a character witness may testify (A) that the witness has a reputation for untruthfulness, or (B) that, in the character witness's opinion, the witness is an untruthful person.
>
> (2) *Rehabilitation by a Character Witness.*—*After the character for truthfulness of a witness has been attacked,* a character witness may testify (A) that the witness has a good reputation for truthfulness or (B) that, in the character witness's opinion, the witness is a truthful person." (Emphasis added).

Thus, all witnesses, including criminal defendants, may be rehabilitated with their good character for truthfulness after their character for truthfulness has been attacked. *See, e.g., Vernon v. Tucker,* 30 Md. 456, 462 (1869); *Hallengren v. State,* 14 Md.App. 43, 50, 286 A.2d 213, 217 (1972); *State v. Webb,* 252 Mont. 248, 828 P.2d 1351, 1356 (1992). The defendant suggests that the State's accusations of drug distribution, a crime acknowledged to be relevant for impeachment, and the

State's evidence that the defendant committed these crimes are attacks on his truthfulness in the same manner that a conviction for drug dealing would be an attack on truthfulness. The State acknowledges that the crime of drug dealing indicates untruthfulness and it alleges that the defendant is guilty of drug dealing, yet it also maintains that it has not attacked his credibility. We hold that, when a defendant charged with a crime which would be an impeachable offense elects to testify, the State's evidence that the defendant committed the impeachable offense constitutes an attack sufficient to allow the defendant to present character evidence of his or her good character for truthfulness.[2]

The 1971 Revision of the initial draft of the proposed federal rules of evidence added language which would have expressly allowed a criminal defendant who testifies to introduce evidence of good character for truthfulness. Revised Draft of Proposed Rules of Evidence for the United States Courts and Magistrates, 51 F.R.D. 315, 388–90 (March, 1971). An explanation for that proposal was:

"In a sense a defendant is always intensely interested in the outcome of the case and is impeached by his status alone. While this change was a modification of common law theory, it followed courthouse practice in many parts of the country. Typically a character witness for the defendant is called once and asked all the questions under Rules 404(a)(1) and 404(a)(3) and 608. For example, in an assault case he is asked both about defendant's reputation for peacefulness and, when defendant will take, or has taken, the stand, about the defendant's reputation for veracity. Since character witnesses normally have other things to do and their testimony is usually brief, they are typically put on the

---

**2.** A defendant's right to present good character evidence is not without risk. As we said in *State v. Watson*, 321 Md. 47, 52, 580 A.2d 1067, 1069 (1990):

"The potential price that a defendant may pay for offering proof of his or her good character is to throw open an avenue of inquiry previously foreclosed to the State."

stand as soon as they arrive in court, whether or not the defendant has already testified."

3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 608[02], at 608–14–15 (1988).

The Department of Justice and Senator McClellan objected to the language expressly permitting an accused to buttress character for truthfulness before it was attacked and perhaps even before the accused testified, although Senator McClellan concluded the issue "is not of large moment." *See* 3 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 303, at 209 n. 47 (1979) (quoting Senator McClellan's Letter, 117 Cong.Rec. 33642, 33645 (Sept. 28, 1991)). The proposed federal rule was amended as follows with bracketed material omitted:

"(a) **Opinion and Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion, but subject to these limitations: (1) the evidence may refer only to *character for truthfulness or untruthfulness*, and (2) [, except with respect to an accused who testifies in his own behalf,] evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

*See* 3 *Weinstein's Evidence* ¶ 608[02], at 608–17. Proposed Rule 608 in that amended form became the Advisory Committee's final draft and was ultimately adopted.[3] The Advisory Committee also eliminated the following note which contained the justification for its 1971 draft:

---

**3.** Maryland Rule 5–608(a)(2), which was not in effect at the time of trial in the instant case, differs slightly in form from its federal counterpart. Maryland Rule 5–608(a)(2) merely provides:

"*Rehabilitation by a Character Witness.*—After the character for truthfulness of a witness has been attacked, a character witness may testify (A) that the witness has a good reputation for truthfulness or (B) that, in the character witness's opinion, the witness is a truthful person."

The newly adopted Maryland Rules of Evidence are consistent with our holding in the instant case.

"The exception with respect to the accused who testifies is based upon the assumption that the mere circumstance of being the accused is an attack on character. It is consistent with the admissibility of evidence of good character under Rule 404(a)(1)."

*Id.*

Perhaps because of the history of Federal Rule 608(a), most criminal cases decided pursuant to the rule fail to differentiate between defendants charged with veracity impeaching offenses and defendants charged with less serious offenses, and the cases simply hold that neither the charge nor the fact that the State's witnesses contradict the defendant's testimony constitutes an attack on a defendant's character for truthfulness sufficient to permit the defendant to introduce evidence of good character for truthfulness. *See* 3 *Weinstein's Evidence* ¶ 608[08], at 608–64–65. *See also Angelini,* 678 F.2d at 382 n. 1; *United States v. Dring,* 930 F.2d 687, 690–92 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 110, 121 L.Ed.2d 68 (1992); *United States v. Danehy,* 680 F.2d 1311, 1314 (11th Cir.1982). State courts construing a corresponding rule also hold that the mere fact that the defendant takes the stand does not constitute an attack on his credibility. *See Rios v. State,* 262 Ark. 407, 557 S.W.2d 198, 200 (1977); *Daly v. State,* 99 Nev. 564, 665 P.2d 798, 803 (1983); *People v. Colclasure,* 200 Ill.App.3d 1038, 146 Ill.Dec. 742, 747, 558 N.E.2d 705, 710, *appeal denied,* 133 Ill.2d 562, 149 Ill.Dec. 327, 561 N.E.2d 697 (1990).

Our holding in the instant case may overrule at least one prior decision of the Court of Special Appeals. *See Boone v. State,* 33 Md.App. 1, 6, 363 A.2d 550, 554 (1975), *cert. denied,* 279 Md. 681 (1976), where the Court of Special Appeals, quoting 81 Am.Jur.2d *Witnesses* § 639, stated:

" 'To warrant the admission of evidence of a witness' general character or reputation for truth and veracity in support of such witness, there must be some special or particular element introduced in the case by which such witness is impeached or discredited.... Thus, where a

defendant in a criminal case elects to testify in his own behalf, and where his credibility is not attacked, except by contradiction of his testimony, evidence sustaining his reputation for truth and veracity is not admissible.' "

33 Md.App. at 8, 363 A.2d at 554–55.

Although our holding may be a minority view, some text writers have suggested the rule we adopt in the instant case. *See, e.g.,* 28 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 6116, at 74–75 (1993) stating:

"[T]he mere bringing of criminal charges may constitute an attack on truthfulness, but only where the defendant is charged with perjury or some other crime impugning veracity. If the defendant testifies in such a case, evidence of truthful character would be admissible under Rule 608(a) to support credibility." (Footnote omitted).

There are also at least a few cases in accord with our holding, especially where the issue before the trier of fact is the defendant's credibility weighed against the credibility of the State's witnesses. In *People v. Taylor,* 180 Cal.App.3d 622, 225 Cal.Rptr. 733 (1986), the court acknowledged the general rule that good character evidence could only be introduced when the character of the witness for truth and honesty had been attacked. 225 Cal.Rptr. at 736. The court continued, however, asserting:

"It is also well established, however, that when a defendant in a criminal prosecution takes the stand and denies his guilt he puts in issue his reputation for truth and honesty and subjects himself to the rules for testing credibility.... In this case, the question of credibility was not collateral but critical. As the prosecutor acknowledged, the *only* issue in this case was credibility. Far from being 'unnecessary to a proper determination' of this issue, the proffered reputation evidence was the only support available to defendant for his version of the facts, other than the conflicting testimony elicited from [the opposing party] on cross-examination." (Emphasis in original) (citations omitted).

225 Cal.Rptr. at 737. In *Taylor,* the appellate court reversed the trial court based on the California Constitution and found error in precluding evidence of the defendant's good reputation for truth and veracity. 225 Cal.Rptr. at 739.

■ We find that the four reasons most often given for refusing to allow evidence of a witness's good character for truthfulness until the witness's character for truthfulness is attacked are not persuasive where the witness is a defendant on trial for a veracity impeaching offense.

*1) We do not permit evidence of good character for truthfulness, absent a direct attack on truthfulness, as a corollary to the rule that, generally, character evidence is inadmissible.*

1 *McCormick on Evidence* § 47, at 172 n. 1 states:

"The exclusion of character-support [for truthfulness], in the absence of attack, is frequently explained as the corollary of a presumption that the character of the witness is good."

But there is no presumption that people charged with serious crimes have good character. It is because no such presumption of general good character exists for criminal defendants that we allow criminal defendants to introduce evidence of their good character for the character trait relevant to the crime charged. Since criminal defendants are already given the unique right, not afforded to any other litigant, to introduce good character evidence, it is a reasonable corollary to that rule that defendants charged with crimes which reflect negatively on their truthfulness ought to be able to introduce character evidence to show that they are truthful people and should be believed when they testify that they did not commit the veracity impeaching crime charged.

■ *2) Evidence of good character for truthfulness is irrelevant because, in the absence of an attack on truthfulness, we presume all witnesses tell the truth.*

In *United States v. Bowie,* 892 F.2d 1494 (10th Cir.1990), the court stated:

"Fed.R.Evid. 608(a)(2) provides that 'evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.' * * * Fed.R.Evid. 608(a)(2) seems primarily concerned with saving time and simplifying trials; unless there is a specific reason to believe otherwise, we can safely presume that witnesses tell the truth." (Citations omitted).

892 F.2d at 1499.

While it is reasonable to conclude that jurors and judges will assume that, as a general rule, witnesses tell the truth when they testify, it is not reasonable to conclude that jurors and judges will assume that, as a general rule, someone indicted for drug distribution or a similar veracity impeaching offense is telling the truth when his or her testimony conflicts with the testimony of a police officer. An accused drug dealer and a police officer may be entitled to an equal presumption of truthfulness in the eyes of the law, but it is doubtful they are given an equal presumption of truthfulness in the eyes of a jury. Defendants charged with veracity impeaching offenses ought to be able to introduce character evidence to prove they are truthful people and that their testimony, even though in conflict with the prosecution's witnesses, should be given some weight.

■ *3) Evidence of good character for truthfulness is irrelevant because, when witnesses contradict each other, it is generally because one of the witnesses made an honest mistake or had a memory lapse, not because of deliberate untruthfulness.*

Professor McLain suggests that methods of impeachment which "do not amount to an attack on the witness' truthfulness but suggest, for example, only a memory lapse or other mistake," do not open the door for good character for truthfulness. 6 Lynn McLain, *Maryland Practice* § 608.3, at 72 (1987). Generally, contradiction is not an attack on character for truthfulness, but the State's accusations and evidence that the defendant committed a crime that adversely impacts on

credibility is an attack on the defendant's truthfulness which goes far beyond merely suggesting memory lapse or mistake. Fact finders may assume that generally witnesses intend to tell the truth and, if any witnesses' testimony is inaccurate, it is an honest mistake or memory lapse, rather than untruthfulness. But a criminal defendant's testimony denying the offense charged can rarely, if ever, be an honest mistake or memory lapse. Since a defendant who testified to his innocence is usually either telling the truth or lying, the State's contrary evidence of guilt of a veracity impeaching offense is an attack on truthfulness. *Cf. Franklin Sugar Refining Co. v. Luray Supply Co.*, 6 F.2d 218, 219–20 (4th Cir.1925). The issue in *Franklin Sugar* was whether defendant was properly permitted to offer evidence of the good character for truthfulness of two defense witnesses, Ford and Harnsberger, who were only impeached by the conflicting testimony of two of plaintiff's witnesses, Frazier and McLaurin. The Fourth Circuit held the good veracity character evidence was properly admitted and stated:

"Ford and Harnsberger could by no reasonable possibility have been mistaken. They testified as to the one and only interview they had ever had with Frazier or with McLaurin. The matter of these interviews was of very great importance to Ford and Harnsberger. Forgetfulness on their part was simply beyond the range of reasonable possibility. As a practical necessity their testimony was either knowingly untrue, or was in strict accordance with the facts. The result is that the veracity of Ford and Harnsberger was as effectually put in issue by the contradictory testimony of Frazier and McLaurin as it could have been by any possible method of cross-examination. Because Ford and Harnsberger could by no reasonable possibility have been mistaken, the contradiction of their testimony by Frazier and McLaurin certainly bred some suspicion of their veracity, and a removal of such suspicion was a prerequisite to the possibility of a verdict for the defendant. If there can be such a thing as an attack on the character of witnesses for veracity by mere disproof of their statements by conflicting testimo-

ny by other witnesses, then there was such an attack at the trial of this case."

6 F.2d at 219–20. It borders on hypocrisy to suggest that, even though the State alleges and attempts to prove that the defendant committed a crime that indicates untruthfulness, the State has not attacked the defendant's credibility.

■■■ *4) Permitting evidence of witnesses' good character for truthfulness absent attack would unduly prolong trials.*

The Advisory Committee's Note on Federal Rule 608(a) states:

"Character evidence in support of credibility is admissible under the rule only after the witness' character has first been attacked, as has been the case at common law. The enormous needless consumption of time which a contrary practice would entail justifies the limitation." (Citations omitted).

Obviously, permitting a criminal defendant to offer good character for truthfulness in addition to offering the already permitted good character for the trait involved in the crime charged would not involve any "enormous needless consumption of time." It would only expand the already permitted character witnesses' testimony by one or two additional questions about the defendant's character for truthfulness.

In the instant case, the vice detective testified that drugs were sold to him by the defendant. The defendant testified that he did not sell the drugs. The issue before the jury was which witness was telling the truth. Despite the equal presumption of truthfulness the law in theory accords each witness, it would be folly not to recognize that police officers generally have an aura of credibility that indicted drug dealers generally lack. If the jurors recognize the premise of cases like *Giddens* and *Pierce* that a person who sells drugs "may not take the oath seriously," they may reason that, if Sahin is guilty of drug dealing, he would lie under oath and testify he was innocent. They may also reason that if Sahin was innocent, he would also testify he was innocent. Therefore, Sahin's denial of guilt is equally likely to be either the expected

lie by a drug dealer or the truth from a truly innocent man. With his denial of guilt being anticipated whether he was guilty or innocent, the jury might give little weight to Sahin's testimony when weighing it against the conflicting testimony of the vice detective. Character evidence that he is a truthful person may be important to give credence to his testimony. Since we already allow Sahin to offer character evidence that he is a law abiding person and therefore would be unlikely to sell drugs, we also should allow him to offer evidence that he is a truthful person whose testimony ought to be given serious consideration and not just dismissed as the denial of guilt one might expect from a drug dealer. It will not unduly or unnecessarily delay trials to permit defendants charged with veracity impeaching offenses who are already permitted to call character witnesses to additionally elicit from those character witnesses the defendant's good character for truthfulness.

For the reasons indicated, we hold that the State's charges and evidence that the defendant committed a veracity impeaching offense is an attack on the defendant's character for truthfulness sufficient to permit evidence of good character for truthfulness after the defendant testifies.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.*