654 A.2d 936

**Everett Don WILSON, II**

v.

**STATE of Maryland.**

**No. 821, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

March 2, 1995.

Geraldine Kenney Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County of Upper Marlboro, on the brief), for appellee.

Submitted before WILNER, C.J., and BISHOP and HOLLANDER, JJ.

WILNER, Chief Judge.

Appellant was tried in the Circuit Court for Prince George's County for first degree murder, second degree murder, voluntary manslaughter, and carrying a weapon openly with intent to injure. He was acquitted of first and second degree murder but convicted of and sentenced for voluntary manslaughter and the weapons charge. He presents a number of issues in this appeal, but we need consider only one. We conclude that the court erred in not permitting a character witness called by appellant to testify to his opinion of appellant's character trait of veracity.

Appellant shot and killed his stepfather, Reginald Ferguson, on the night of November 21–22, 1992. The issue at trial was whether there was justification or mitigation for the shooting. Appellant and his mother testified to a ten-year history of abusive behavior by Ferguson toward the two of them. Appellant testified that he believed Ferguson owned a gun and that Ferguson kept knives under his mattress and other

weapons, including a crowbar and a hammer, under his bed. Appellant's mother stated that, on November 21, 1992, Ferguson repeatedly threatened her and appellant and that she eventually left the house to look for help. Appellant testified that Ferguson then grabbed, pushed, and choked him and that appellant "panicked," took a shotgun from his closet, and went to Ferguson's room. He said that he saw Ferguson reaching under the bed and believed he was reaching for a gun and was going to shoot him. Appellant fired the shotgun; Ferguson leaped toward him; appellant fired again. Appellant turned himself in to the police a few hours later. The police found no weapons in the room.

Appellant testified in his own defense about the history of the abuse he and his mother had suffered and about the circumstances surrounding the shooting. He was cross-examined extensively on those matters. Following that testimony, defense counsel called Ernest Tuck as a character witness. Mr. Tuck was a computer specialist, a martial arts instructor, secretary-treasurer of his mother's business, and a Methodist minister.

Mr. Tuck said that he met appellant in mid-November, 1992, which would have been within a week or so before the date of the offenses. He said that he had maintained contact with appellant since then but had become "really close" with him only "within the past year," meaning presumably since March, 1993 (his testimony was given on March 16, 1994). He testified about the things he and appellant did together, ranging from Bible study to martial arts. After declaring himself appellant's friend and teacher, Mr. Tuck was asked whether he had an opinion as to appellant's "character trait for truthfulness." The State objected to any line of questioning on opinions of character traits for truthfulness "or peacefulness, if that is going to be elicited."

The basis of the objection was that the witness "didn't even meet [appellant] until the same night that this incident happened, so all of these character traits are based on the defendant's post-incident activity, and that is simply not rele-

vant here." The court sustained the objection on the basis that a trait for veracity had nothing to do with the crime. Counsel never inquired with respect to whether Mr. Tuck had an opinion as to appellant's character for peacefulness.

Appellant now contends that the court erred in excluding testimony with respect to his traits for veracity and peacefulness. The second of these complaints is easily resolved. As noted, counsel never asked Mr. Tuck about the trait of peacefulness; the record, therefore, does not indicate that Mr. Tuck had any opinion as to that trait. Nor did the court ever, in any way, rule on such an inquiry. It simply sustained an objection to the question inquiring about appellant's character for veracity.

In *Sahin v. State,* 337 Md. 304, 653 A.2d 452 (1995), the Court pointed out that, where the defendant is charged with a crime that is not regarded as a *crimen falsi* offense, evidence of a character trait for truthfulness is only indirectly relevant and that, accordingly, it is not admissible as circumstantial evidence of innocence in lieu of a more directly relevant character trait. That is the case here; whether appellant is ordinarily a truthful person is not relevant in establishing whether he committed murder or manslaughter, or carried a weapon openly with intent to injure someone. The *Sahin* Court went a step further, however. It considered the character trait of truthfulness not only as evidence of innocence but also for its value in rehabilitating the testimony of the defendant once that testimony has been impeached. In that regard, the Court held that

> "when a defendant charged with a crime which would be an impeachable offense elects to testify, the State's evidence that the defendant committed the impeachable offense constitutes an attack sufficient to allow the defendant to present character evidence of his or her good character for truthfulness."

(At 314, 653 A.2d 452.)

Although *Sahin* had not been decided when appellant was tried and, because it represents a minority view national-

ly, could not reasonably have been anticipated, it is now the law in this State and must be applied. Appellant was on trial for an "impeachable offense," as defined by the Court of Appeals in *Sahin,* and the State had produced evidence that appellant had committed one or more of those impeachable offenses. Thus, opinion evidence of his good character for truthfulness was admissible to bolster his credibility.

The prosecutor's objection was based on the fact that Mr. Tuck had only recently met appellant at the time of the offenses and thus, as of that time, did not have sufficient knowledge of appellant's character traits. As we indicated, the court did not sustain the objection on that basis, but, because a court can sometimes be right for the wrong reason, we shall address that objection. There is no merit to it.

This issue was considered in *United States v. Null,* 415 F.2d 1178 (4th Cir.1969), although the context was slightly different. The question was whether the government could cross-examine character witnesses with respect to the defendant's reputation for veracity at the time of trial, rather than at the time the offense was allegedly committed. Speaking for the Court, Judge Winter observed, at 1180, that, ordinarily, it is the character of the accused at the time of the alleged crime that bears most nearly on the inference of innocence of guilt and that, as a result, reputation evidence must be confined to reputation at that time. When the reputation evidence is intended to bolster the defendant's credibility as a witness, however, rather than directly support an inference of innocence, "his reputation *at the time of trial* [is] crucial and, therefore, relevant."

*McCormick on Evidence,* 4th ed., takes a similar approach. Citing, *Null,* it states, at 158:

"The crucial time when the character of the witness under attack has its influence on his truth-telling is the time when he testifies. But obviously reputation takes time to form and is the resultant of earlier conduct and demeanor, so that it does not precisely reflect character at a later date. The practical solution is to do what most courts actually do, that

is, (1) to permit the reputation-witness to testify about the impeachee's 'present' reputation as of the time of the trial, if he knows it, and (2) to permit testimony as to reputation (which is usually a settled, continuing condition) as of any time before trial which the judge in his discretion finds is not too remote to be significant. This practice should be permitted by Federal Rule of Evidence 608(a). The opinion of the witness permitted by the federal rule should have a similar time relation to trial."

When the character testimony involves the witness's *opinion* as to the defendant's (or other witness's) veracity, rather than the defendant's *reputation* for veracity, the need to relate the testimony to the time of trial is even more pronounced. Whether the witness was regarded as a truthful person in the past is not nearly so relevant as whether he is regarded as a truthful person at the time he testifies.

Mr. Tuck gave sufficient background to establish his knowledge of appellant's character for truthfulness at the time of trial. By then, he said, he had come to know appellant well. Accordingly, because of *Sahin,* we must conclude that the court erred in refusing to permit Mr. Tuck to express his opinion, which, in the context before us, we must assume would have been favorable. As credibility was a critical issue in the case, we cannot declare the error to be harmless.

JUDGMENT REVERSED; PRINCE GEORGE'S COUNTY TO PAY THE COSTS.