Filed 8/26/13  P. v. Rodriguez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARK ANTHONY RODRIGUEZ,<br><br>    Defendant and Appellant. | G047053<br><br>(Super. Ct. No. 08ZF0044)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Mark Anthony Rodriguez of robbery (Pen. Code, § 211) and active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)) in a second trial after the first jury was unable to reach a verdict. The jury found a principal in the robbery used a firearm (Pen. Code, § 12022.53, subds. (b), (e)(1)) and found the gang enhancement (Pen. Code, § 186.22, subd. (b)(1)) true. The court sentenced defendant to 13 years in state prison, consisting of a three-year middle term on the robbery conviction and a consecutive 10-year term on the firearm enhancement. Defendant contends the trial court erred in admitting evidence, cumulative error requires reversal, the evidence was insufficient to support the convictions, and the court erred in imposing restitution fines. Finding no such errors, we affirm.

I

FACTS

*The Robbery and Defendant's Statements*

On June 29, 2008, at about 2:10 a.m., Ronald Santa Cruz was working as a cashier at a Shell gas station in Irvine. Two young men entered the gas station. One of the men, Armando Hernandez, demanded the money in the register and threatened to shoot Santa Cruz. Santa Cruz saw Hernandez had a gun and gave him the money. The other man attempted to throw a container of energy drinks at Santa Cruz, but the container was apparently too heavy. A video camera inside the gas station recorded the incident.

After the robbery, Santa Cruz saw the two men walk to the back of the gas station. That was the last he saw of the men; he did not see them leave in a car.

In October 2008, Detective Jeff Mundy of the Anaheim Police Department twice interrogated defendant about the robbery and a shooting that occurred earlier the

2

evening of the robbery.[1]  Over defendant's objection, the court ruled evidence of

defendant's statements concerning the earlier shooting were admissible under Evidence

Code[2] section 1101, subdivision (b) to show knowledge and intent, and the probative

value of the evidence was not outweighed by any prejudicial effect of the evidence.  The

court found the statements were not obtained in violation of *Miranda*[3] and held no

extrinsic evidence of the purported murder would be admitted.  A video of the

interrogations was played for the jury.

In discussing the night of the robbery and shooting that occurred earlier that

evening, defendant initially claimed he was picked up by four strangers in a car after the

shooting had already occurred, they drove on a freeway to a Del Taco, and then dropped

him off at his grandmother's house.  He denied knowing anything about the shooting.

Later, defendant said he was picked up in an alley in Anaheim by known Citron Street

gang members.  Defendant, sat behind the driver, the individual he identified as

"Grumpy."  Defendant said he knew Grumpy better than he knew the three others in the

car.  Defendant knew the passenger sitting next to him had a gun.

There was a discussion about gang members from "Folks," a rival gang,

having been seen in the neighborhood.  As they drove, they saw two "baldies" they

thought were members of Folks.  The car stopped across the street from the suspected

rivals and three of the passengers got out of the car to "hit them up" the suspected rivals.

Defendant said that when members of one gang hit up someone from a rival gang, a fight

will result.  He added that when the person hitting up a suspected rival has a gun, that

---

[1]  The murder charge arising out of the shooting was dismissed twice and the subject of our decision in *People v. Rodriguez* (2013) 217 Cal.App.4th 326, affirming an order barring a third prosecution.

[2]  All further statutory references are to the Evidence Code unless otherwise stated.

[3]  *Miranda v. Arizona* (1966) 384 U.S. 436.

3

person will shoot the suspected rival. Upon being hit up, one of the Folks members fired a shot and yelled, "Folks." They ran and the three companions of defendant who left the car gave chase. One of the two Folks members was then shot and killed. Defendant admitted that had the Folks rival not fired a shot, he would have gotten out of the car to throw a punch at the rivals.

After the shooting incident, the group drove to Irvine. On the way, the right front passenger and the right rear passenger said they wanted to "come up" or steal some money. The Shell gas station was selected as the target because it was empty. Defendant expected the money to come from the cash register. The right front passenger and the right rear passenger were dropped off on the street behind the gas station and went inside. Defendant knew what they were going to do. The robbers were gone about 10 or 15 minutes.

The others in the car drove around looking for them. They saw the robbers hiding in bushes. While looking for the robbers, defendant kept an eye out for the police because he did not want the robbers to get arrested. He would have warned the others had he seen any police. The robbers got back into the car and the group drove to a Del Taco. The robbery netted less than $100. On the way to Del Taco, the right front passenger, Hernandez, gave the right rear passenger about $20 or $25. Hernandez paid for the food Del Taco. After eating, the group dropped defendant off in Anaheim, near his grandmother's residence.

*Gang Evidence*

Three different Anaheim police officers testified about the Citron Street gang. Investigator Kelly Phillips testified to the history of the gang, the predicate act convictions of two members of the gang, and that the gang's primary activities are felony vandalism and aggravated assault. He concluded Citron Street is a criminal street gang with about 60 active members as of June 2008.

4

Phillips said a "hit up" is a challenge by a gang member to a member of another gang. He said that if members of rival gangs are involved, the hit up will likely lead to violence. In gang culture, violence equates to respect, and respect is the same as fear. Phillips explained that the concept of "backup" may consist of helping another gang member assault someone, acting as a lookout, by distracting police, or otherwise assisting another member of the gang commit a crime. He said gang members are expected to backup each other and gang members do not generally commit crimes with nongang members. Backup allows the direct perpetrator of a crime to act bolder, knowing they have support from other gang members. The purpose of backup is to ensure the success of the crime undertaken.

Phillips said most gangs have a rule that when one member is in a car and has a gun, he will inform other gang members in the car of the gun's presence. That way the others can take steps to keep the gun from being found in the event the police stop the car. In a hypothetical that closely tracked the facts of the case, Phillips opined the robbery would benefit the Citron Street gang because most gangs pay taxes on its profits to the Mexican Mafia and because word of the robbery creates respect.

Officer Paul Delgado was a gang investigator in 2008. He knows defendant. Delgado opined defendant was an active participant in the Citron Street gang based on his contacts with defendant, defendant's admission that he often hangs out with Citron Street gang members, and defendant did not deny his moniker—a nickname given a gang member—is Panther.

Delgado participated in the execution of a search warrant for defendant's residence. Police found a Department of Motor Vehicles document in defendant's name, a plastic coffee cup with gang writing on it, two envelopes addressed to defendant and sent by incarcerated Citron Street gang members, and a 70-sheet notebook containing gang writings, including "Bad Boys," another name used by the Citron Street gang.

5

Detective Mundy testified defendant was an active participant in the Citron Street gang. He has contacted defendant with other members of the Citron Street gang in territory claimed the gang. Those contacts were significant to Mundy because gang members do not usually "hang out" with nongang members and because defendant does not live in Citron Street territory.

Mundy also testified to the contents of defendant's MySpace page. That page contained a photograph of defendant and the statement "Free the Homies," which Mundy said is common in the gang culture when a gang member or gang members have been arrested. Approximately a week after defendant's arrest, Mundy saw "CST X3 Free Lil Panther" graffiti in the Citron Street neighborhood. Another photograph from MySpace showed defendant making a "C" with his right hand, a sign defendant admitted is used by members of the Citron Street gang.

II

DISCUSSION

A. *Sections 1101 and 352*

Section 1101, subdivision (a) provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." An exception to this rule exists when the crime or act is "relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, . . .) other than his or her disposition to commit such an act." (§ 1101, subd. (b).)

A "trial court is vested with wide discretion in determining the admissibility of evidence." (*People v. Karis* (1988) 46 Cal.3d 612, 637.) "'Like other circumstantial evidence, admissibility [pursuant to section 1101, subdivision (b)] depends on the materiality of the fact sought to be proved, the tendency of the prior crime to prove the material fact, and the existence *vel non* of some other rule requiring exclusion.'

6

[Citation.]" (*People v. Jones* (2012) 54 Cal.4th 1, 49.) We review the trial court's evidentiary rulings, including those "that turn on the relative probativeness and prejudice of the evidence in question" for an abuse of discretion. (*People v. Hamilton* (2009) 45 Cal.4th 863, 930.) An abuse of discretion will be found only when the trial court's decision is found to be arbitrary, capricious, or whimsical and "exceeds all bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) We find no such abuse here.

Over defendant's objection, the trial court admitted into evidence his statement that prior to the robbery, he was in the same car with the same gang members when they hit up gang members from a rival gang. Although defendant had intended to get out of the car and backup the Citron Street gang members by assaulting the rivals, he stayed inside the car when one of the two "baldies" shot at the Citron Street gang members. The court found the evidence relevant on the issues of defendant's knowledge and intent at the time of the robbery.

At trial, defendant argued against admission because there had been no trial with respect to the uncharged shooting. This issue need not detain us long. A prior trial and/or conviction is not required before evidence of the conduct may be admitted under section 1101, subdivision (b). (See *People v. Williams* (2009) 170 Cal.App.4th 587, 607 [in drug prosecution, evidence of defendant's *prior drug use* and convictions generally admissible to prove knowledge of narcotic nature of drug].) Moreover, the statute does not refer to prior convictions. It authorizes evidence of crimes, civil wrongs or other acts when relevant. While the crimes and civil wrongs may be adjudicated in other proceedings, the same may not hold true for "other act[s]" admissible under the statute. Additionally, evidence of an act that occurred *after* the charged offense is admissible (*People v. Griffin* (1967) 66 Cal.2d 459, 464-465; *People v. Taylor* (1986) 180 Cal.App.3d 622, 626 [section 1101, subdivision (b) does not require uncharged act to occur prior to charged offense]), making the existence of a conviction in those instances

7

less likely.  Consequently, there is no reason to conclude a prior conviction is required before evidence of another crime may be admitted under subdivision (b) of section 1101.

Defendant maintains that if the trial court was correct about there being "no facts that demonstrate any involvement by the defendant in the uncharged shooting other than being present," then the same must be said about his involvement in the robbery.  In both instances defendant remained in the car while the shooting or robbery were committed.  However, defendant ignores the fact that his statement about the shooting incident demonstrated he knew about the role of backing up other gang members and that he was expected to backup the Citron Street gang members in the car.  He also admitted he would have gotten out of the car and assaulted the Folks gang members had they not first fired a shot.  Shortly after that incident, the same group drove to Irvine.  A robbery was discussed on the drive and carried out when two of the group robbed the attendant at the Shell station.  While two went into the Shell station, the car left the station and returned, the driver and remaining passengers (including defendant), looking for the robbers and keeping an eye out for the police.  They found the robbers hiding in a bush, stopped, picked them up, made good their escape and went to Del Taco, where one of the robbers apparently bought food for the everyone in the car.  The evidence was admissible under section 1101, subdivision (b) to show defendant's knowledge and intent.

Defendant argues that even if the evidence was admissible pursuant to section 1101, subdivision (b), it was substantially more prejudicial than probative and should have been excluded under section 352.  That section authorizes a court to exclude evidence when the probative value of particular evidence is substantially outweighed by a substantial danger of undue prejudice.  (§ 352; *People v. Pearson* (2013) 56 Cal.4th 393, 457.)  A trial court has broad discretion under section 352 and we review the trial court's decision for an abuse of discretion.  (*People v. Riccardi* (2012) 54 Cal.4th 758, 808-809.)

While other crimes evidence is inherently prejudicial, it may still be admissible if it is substantially probative.  (*People v. Carpenter* (1997) 15 Cal.4th 312,

8

380.) Evidence of defendant's knowledge of the role of backup and his stated intent to backup members of Citron Street had a strong tendency to demonstrate he was not just *merely present* when the same gang members robbed the Shell gas station shortly after the shooting. It also showed he knew of the gang's commission of violent crimes, an element of active participation in a criminal street gang (§ 186.22, subd. (a)), an offense defendant was charged with committing. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130.) Additionally, the evidence tended to prove defendant specifically intended to promote, further, or assist in the robbery as required by the charged gang enhancement (§ 186.22, subd. (b)(1)). (*In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1358.)

The trial court did not abuse its discretion in admitting defendant's statements concerning his conduct in the shooting incident that occurred shortly before the robbery. With the trial court's ruling prohibiting other evidence of the shooting, the jury was left with one version—that a Folks gang member shot first, and defendant stayed in the car during the incident—limiting the potential for undue prejudice.

B. *Evidence of Mundy's Statements During Defendant's Interrogation*

During defendant's interrogation, Mundy made statements to the effect that he did not believe defendant. Defendant asserts the court erred in permitting the jury to hear the recording of his interrogation without redacting those portions wherein Mundy expressed a belief that defendant was not being truthful. He maintains Mundy's statements were not admissible because a witness's opinion of a defendant's guilt does not aid a jury as it is "as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt." (*People v. Torres* (1995) 33 Cal.App.4th 37, 47.)

Defendant does not allege he objected to Mundy's statements and our review of the record has not disclosed an objection to the inclusion of Mundy's statement in the recording of defendant's interrogations. By not objecting on the ground now asserted on appeal, defendant "deprived the trial court of an opportunity to make a fully

9

informed ruling on the issue. [Citations.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 48.) Because he did not raise the issue in the trial court, defendant has forfeited this argument. (*People v. Pearson*, *supra*, 56 Cal.4th at p. 439.)[4]

C. *The Evidence Supports the Judgment*

      1. *Robbery*

Defendant next argues the evidence does not support his conviction for robbery. Contrary to his assertion, the evidence did not establish, *at most*, that he was but a passenger in the vehicle when the robbery occurred.

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1249.) We must accept all assessments of credibility made by the trier of fact and determine if substantial evidence exists to support each element of the offense. (See *People v. Carpenter*, *supra*, 15 Cal.4th at p. 387.) We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) We may reverse for lack of substantial evidence only if "'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) In making this inquiry, it is important to note we do not ask ourselves whether *we* believe the evidence established guilt beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319.) "Instead, the relevant question is whether, after

---

[4] Because we find the trial court did not err in admitting evidence of defendant's statement concerning the earlier shooting and defendant forfeited the issue concerning inclusion of Mundy's statements in the recording of defendant's statements, we need not address defendant's contention that the cumulative effect of these purported errors denied him a fair trial.

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.]" (*Id*. at p. 319.) "The standard of review is the same when the prosecution relies mainly on circumstantial evidence. [Citation.]" (*People v. Valdez* (2004) 32 Cal.4th 73, 104.)

Defendant lives in Santa Ana, but he spends significant time in Anaheim, in Citron Street territory, and in the presence of Citron Street gang members. On the night of the robbery he was in a car with four other Citron Street gang members when three of them hit up two individuals they believed to belong to a rival gang. Defendant, who knew the others in the car were Citron Street gang members, expected to backup those gang members during the hit up and use physical violence against the "baldies," knowing full well that a hit up will likely result in violence and, if a gun is present, the gun will probably be used. Shots were fired.

Shortly after the shooting, the same Citron Street gang members and defendant drove to Irvine. On the way, there was a discussion about committing a robbery. Two of the gang members got out of the car and went into a Shell gas station where they committed a robbery. The driver and other two passengers, including defendant, did not drive into the gas station. But when the robbery was completed, they drove around the area looking for the robbers and keeping an eye out for the police. They saw the robbers hiding in a bush and stopped for them to get back into the car. Defendant admitted that had he seen police in the area, he would have warned the robbers because he did not want them to get caught. After they safely got away, the car full of Citron Street gang members went to a Del Taco where one of the robbers bought defendant his food, and presumably paid for the others.

There were two methods of arriving at a guilty verdict in this case. First, the jury could have relied on the law of aiding and abetting. "To prove that a defendant is an accomplice, . . . the prosecution must show that the defendant acted 'with

11

knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' [Citation.] When the offense charged is a specific intent crime, the accomplice must 'share the specific intent of the perpetrator'; this occurs when the accomplice 'knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime.' [Citation.]" (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.) By defendant's own admission, he knew two of his fellow gang members were going to rob the Shell station. They were dropped off on the street behind the gas station and the driver, defendant, and the remaining passenger later went looking for robbers after the robbery in order to effectual their escape. While defendant kept an eye out for the robbers, he also kept an eye out for the police and would have warned the others if he spotted any police because he wanted the robbers to get away successfully. The jury could properly have found defendant aided and abetted the robbers.

The second theory of liability is based on the law of conspiracy. A conspiracy "requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act 'by one or more of the parties to such agreement' in furtherance of the conspiracy. [Citation.]" (*People v. Morante* (1999) 20 Cal.4th 403, 416, fn. omitted.) Conspiracy does not require and express verbal agreement. A jury may find a conspiracy existed based on "the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy. [Citations.]" (*People v. Cooks* (1983) 141 Cal.App.3d 224, 311.) The fact that committing a robbery was discussed on the drive to Irvine, the robbers were dropped off behind the Shell gas station and later picked up to make good their escape tends to show there had been an agreement to commit the robbery.

12

The evidence supports the jury concluding defendant's presence during the robbery was not an accident and that defendant acted with the intent to facilitate the robbery. Accordingly, we reject defendant's sufficiency of the evidence challenge.

2. *Active Participation in a Criminal Street Gang*

The crime of actively participating in a criminal street gang (Pen. Code, § 186.22, subd. (a)) has three elements: "(1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang. (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)" (*People v. Albillar* (2010) 51 Cal.4th 47, 55-56.) Defendant asserts the first and third elements are lacking.

Notwithstanding the fact that defendant lives in Santa Ana, not Anaheim, during a seven-month period in 2008, Detective Munday had approximately 10 contacts with defendant in Citron Street territory in Anaheim. He was in the presence of other Citron Street gang members during a number of those contacts and one such contact resulted in defendant's arrest. His residence in Santa Ana was searched and Citron Street gang memorabilia was found in his bedroom. On the night in question, defendant was with four other Citron Street gang members and intended to back them up in their criminal gang activity in hitting up two individuals believed to belong to a rival gang. Shortly after that incident, he travelled to Irvine with the same gang members and aided and abetted a robbery by acting as a lookout. Thus, his participation in the gang was not merely passive or nominal. The third element—willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang—was established by evidence showing defendant acted as a lookout in the robbery perpetrated by other members of his gang.

13

D. *The Restitution Fines*

Lastly, the court imposed a Penal Code section 1202.4 restitution fine in the amount of $250 and imposed and stayed a Penal Code section 1202.45 parole revocation fine in a like amount.[5] Defendant argues these fines were imposed in violation of the ex post facto clauses of the federal and state Constitutions.

On January 1, 2012, six months before defendant's sentencing, an amendment to Penal Code section 1202.4 became effective, increasing the minimum restitution fine on felony convictions from $200 to $240. (Pen. Code, § 1202.4, subd. (b)(1) as amended by Stats. 2012, ch. 868 § 3 [$240 minimum fine]; former § 1202.4, subd. (b)(1) as amended by Stats. 2007, ch. 302, § 14 [$200 minimum fine].) Even given the fact that a restitution fine is deemed punishment for purposes of an ex post facto analysis and the amount of such a fine must be calculated as of the date of the offense, not conviction, (see *People v. Souza* (2012) 54 Cal.4th 90, 143 [restitution fine constitutes punishment for ex post facto prohibition]; *People v. Downing* (1985) 174 Cal.App.3d 667, 672), defendant's argument fails.

The trial court ordered the fines without reference to the minimum required under section Penal Code section 1202.4, as it existed in 2008 ($200) or 2012 ($240). It merely imposed a restitution fine in the amount of $250, a sum above the minimum regardless of the version of the statute considered. To reverse the trial court's imposition of the restitution fine would require that we *assume* the court mistakenly concluded the 2012 version of Penal Code section 1202.4 applied to defendant's sentence for offenses committed in 2008. There is no reason for such an assumption.

Had the court imposed a $240 restitution find, stating it was imposing the minimum fine permitted by law, or stated it was going to set the amount of restitution

---

[5] Subdivision (a) of Penal Code section 1202.45 requires the court to impose a parole revocation fine in the same amount as the restitution fine imposed pursuant to Penal Code section 1202.4.

14

fine at the minimum plus $10, there would be evidence the court erred in concluding the amendment to Penal Code section 1202.4 applied to defendant's convictions.  But the court did not do that.  It simply imposed a restitution fine of $250, an amount *over and above the minimum* fine under either version of the statute.  It would be nothing short of sheer speculation to conclude the trial court used the wrong version of Penal Code section 1202.4.  Absent some indication the court applied the wrong version of the statute, we have no cause to reverse the trial court's decision, much less reduce the restitution fine to the $200 minimum in effect at the time of defendant's offenses.

III

DISPOSITION

The judgment is affirmed.

MOORE, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

15
